# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-02-00723-CV

**Lydia Williams, Appellant**

**v.**

**Jackie Williams and K. W., Appellees**

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. 02-7380, HONORABLE BENTON ESKEW, JUDGE PRESIDING

## O P I N I O N

Appellee Jackie Williams[1] filed a petition to terminate the parent-child relationship between appellant Lydia Williams and her daughter, K.W.  When Lydia failed to answer, the trial court granted a default judgment, terminating Lydia's parental rights.  Lydia timely filed a motion for new trial, which the trial court overruled.  She now appeals.  We hold that although the citation with which Lydia was served failed to include the name of the petitioner, Jackie Williams, the record reflects that Lydia was properly served.  We further hold that the evidence is legally insufficient to support the trial court's judgment terminating Lydia's parental rights.  We therefore reverse the trial

---

[1] Jackie Williams, maternal grandmother of K.W., is the only appellee who filed a brief with this Court.

court's judgment. In the interest of justice, however, we remand the cause to the trial court for further proceedings.

## BACKGROUND

These facts are compiled from the parties' briefs, their trial court pleadings, and the evidence from the motion for new trial hearing. This factual summary is included to provide a background for the discussion in this opinion but should not be construed as a conclusive finding of any fact for subsequent proceedings.

Lydia Williams is the natural mother of K.W., the child who is the subject of this appeal. Jackie is Lydia's mother and the child's grandmother. By an agreed order dated March 23, 2001, Jackie Williams was appointed sole managing conservator of K.W., and Lydia was appointed possessory conservator.[2]

On June 6, 2002, Jackie filed a petition to terminate Lydia's parental rights to K.W., alleging (1) that Lydia engaged in conduct or knowingly placed her child with persons who engaged in conduct that endangers the physical or emotional well being of the child, (2) that she failed to support the child in accordance with her ability during the period of one year ending within six months of the date of the filing of the petition, and (3) that termination was in K.W.'s best interest. The petition also sought the termination of K.W.'s father's parental rights. Jackie requested in her

---

[2] The record does not reveal what circumstances precipitated the rendition of the agreed order. It appears, however, that Child Protective Services (CPS) was involved, as the order dismisses CPS from the suit.

2

petition that Thomas and Iris Cummins, prospective adoptive parents, be named K.W.'s managing conservators.

Lydia failed to file an answer in response to the petition. Consequently, the trial court held a default judgment hearing on August 2, 2002 and signed an order terminating Lydia's parental rights on August 13. On August 23, Lydia filed a pro se answer, and on September 12, she filed a motion for new trial. The trial court held a hearing on the motion for new trial, during which both Lydia and Jackie testified.

According to Lydia's testimony, she and Jackie maintained a strained relationship, although they saw each other regularly when Lydia visited her daughter, K.W., and they spoke frequently. When Lydia was served with the petition to terminate her parental rights, she spoke to her mother, and based on their conversation, assumed that her mother was not pursuing the petition. Later, Lydia learned from her brother that her mother hired a new attorney and was indeed pressing forward with the termination. Lydia claims that she subsequently contacted a legal hotline and was told that she would be served anew because her mother had hired a different attorney. Based on this advice, Lydia failed to file an answer to the petition. Although Lydia spoke to her mother before the August 2 termination hearing, Jackie never informed Lydia of the hearing date. Thus, Lydia did not learn of the termination of her parental rights until after the trial court rendered its judgment. She then hired a lawyer and filed her motion for new trial. As for her meritorious defense, Lydia alleged that the allegations in Jackie's petition were untrue and insufficient evidence exists to support them.

Following the presentation of evidence, the trial court overruled the motion for new trial. Lydia now appeals the trial court's judgment, challenging the sufficiency of the evidence,

contending the trial court erred in overruling her motion for new trial, and claiming the citation with which she was served was defective.

## DISCUSSION

### Introduction

The natural right that exists between parents and their children is of constitutional dimensions. *Stanley v. Illinois*, 405 U.S. 645, 652 (1972); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). The United States Supreme Court has characterized the right to raise one's child as fundamental—a basic civil right far more precious than property rights. *Stanley v. Illinois*, 405 U.S. at 651. Because the involuntary termination of parental rights is complete, final, and irrevocable, termination proceedings must be strictly scrutinized. *Holick*, 685 S.W.2d at 20.

### Service of Citation

By her first issue, Lydia claims that the citation upon which the default judgment was based is defective, and thus, the judgment is void. She argues that (1) the citation failed to include the name of the petitioner, Jackie, and (2) it was not directed to a sheriff or constable.

Service of citation must be in strict compliance with the rules of civil procedure to establish jurisdiction over a defendant and support a default judgment. *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990); *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985); *Barker CATV Constr., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1999, no pet.). If strict compliance is not shown, the service of process is invalid and of no

4

effect. *Uvalde Country Club*, 690 S.W.2d at 885. We make no presumptions of valid issuance, service, or return of citation when examining a default judgment. *Id.*

To be valid, a citation must comply with twelve requirements. The citation must

(1) be styled "The State of Texas,"

(2) be signed by the clerk under seal of court,

(3) contain name and location of the court,

(4) show date of filing of the petition,

(5) show date of issuance of citation,

(6) show file number,

(7) show names of parties,

(8) be directed to the defendant,

(9) show the name and address of attorney for plaintiff,

(10) contain the time within which these rules require the defendant to file a written answer with the clerk who issued citation,

(11) contain address of the clerk, and

(12) notify the defendant that in case of failure of defendant to file an answer, judgment by default may be rendered for the relief demanded in the petition.

Tex. R. Civ. P. 99b.

In this case, the citation fails to include Jackie's name but complies with rule 99 in all other respects. Instead of naming the parties, the citation includes the style of the case, which is "In the Interest of: [K.W.]." *See* Tex. Fam. Code Ann. § 102.008(a) (West 2002) (suit affecting

5

parent child relationship must be styled, "In the interest of _____, a child"). It also correctly identifies Lydia and includes the name and address of Jackie's attorney. Jackie is named as the petitioner in the original petition to terminate the parent-child relationship, which was attached to the citation. Lydia does not claim on appeal that she was not properly identified on the citation. Nor does she claim that she was not served. Indeed, she filed an answer with the trial court, albeit after the court rendered judgment. Her complaint is that the citation did not include the name of Jackie, who was a party to the dispute, and therefore did not strictly comply with the rules of civil procedure.

We note that strict compliance with the rules does not require "obeisance to the minutest detail." *Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d 608, 613 (Tex. App.—Corpus Christi 1996, writ denied); *Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 871 (Tex. App.—Houston [1st Dist.] 1995, no writ). As long as the record as a whole, including the petition, citation, and return, shows that the citation was served on the defendant in the suit, service of process will not be invalidated. *Regalado v. State*, 934 S.W.2d 852, 854 (Tex. App.—Corpus Christi 1996, no writ); *Ortiz*, 926 S.W.2d at 613; *Payne & Keller Co. v. Word*, 732 S.W.2d 38, 41 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

This case presents a unique issue. On one hand, the failure to include the name of a party, even if it is the name of the plaintiff and not the defendant, is not a minute detail. *Cf. Ortiz*, 926 S.W.2d at 613 (omission of accent mark and of corporate designation and substitution of symbol "@" for word "at" are defects that do not invalidate service); *Cockrell v. Estevez*, 737 S.W.2d 138, 140 (Tex. App.—San Antonio 1987, no writ) (misspelling of defendant's name in citation did not invalidate service); *Payne & Keller Co.*, 732 S.W.2d at 41 (judgment upheld where petition and

6

citation reflected registered agent as "Philippe Petitfrere," and return reflected "Philipee Petitfreere").

On the other hand, there was no confusion about whether the correct party was actually served. *Compare Higginbotham v. General Life & Accident Ins. Co.*, 796 S.W.2d 695, 696-97 (Tex. 1990) (although return did not recite method of service as required, record demonstrated strict compliance with valid method of service), *Dezso v. Harwood*, 926 S.W.2d 371, 374 (Tex. App.—Austin 1996, writ denied) (upholding default judgment even though wrong person was sued because record clearly showed proper defendant received service and knew she was intended defendant), *and Cockrell*, 737 S.W.2d at 140 (although defendant's name was misspelled in citation and return, default judgment not void where defendant did not claim lack of service and was clearly not misled by spelling error), *with Uvalde Country Club*, 690 S.W.2d at 885 (holding that where return showed Henry Bunting was served and petition alleged Henry Bunting, Jr. was proper registered agent of defendant, record did not show that correct person was served), *Hercules Concrete Pumping Serv., Inc. v. Bencon Mgmt. & Gen. Contracting Corp.*, 62 S.W.3d 308, 311 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (where return reflected service on "Hercules Concrete Pumping" instead of "Hercules Concrete Pumping Service, Inc.," court held return failed to show service on proper defendant), *P&H Transp., Inc. v. Robinson*, 930 S.W.2d 857, 859-60 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (reversing default judgment where evidence did not affirmatively show that person named in citation was person actually served), *and Avila v. Avila*, 843 S.W.2d 280, 282 (Tex. App.—El Paso 1992, no writ) (reversing default judgment where record failed to show that person served was person named in citation). Nor does Lydia claim confusion regarding who filed the suit.

Ultimately, although our jurisprudence requires strict adherence to the rules regarding service of citation, it does so to ensure that there is no question about whether the proper party has been served before a default judgment is rendered. Here, however, not only does the return reflect that Lydia was properly served, but Lydia admitted that she was properly served throughout her testimony during the motion for new trial hearing. She testified that she was served while she was in jail, that she carefully read all of "the papers" that were served on her in jail, and that she immediately contacted her father after she was served. Furthermore, when asked how she discovered the names of the prospective adoptive parents, she answered that their names were in "the papers I was served." Finally, in her affidavit supporting her motion for new trial, Lydia averred that she was served while in jail, that her mother was the petitioner in the petition to terminate Lydia's parental rights, and that she drafted a response to the petition two weeks after she was served, but did not mail it until after the default judgment was rendered. Not only did her testimony make clear that she was properly served, but she also knew who the petitioner was in this suit. In light of the fact that there is no dispute as to whether Lydia was properly served and that the record establishes that she was aware of who filed the suit, we hold that the trial court did not err in assuming personal jurisdiction over Lydia. *See Higginbotham*, 796 S.W.2d at 697 (evidence from motion for new trial hearing showed strict compliance with valid method of service); *Cockrell*, 737 S.W.2d at 140 (where defendant claimed neither lack of service nor that he was misled by misspelled name, record did not reflect invalid service).

Lydia also relies on rule of civil procedure 15 in support of her argument. That rule instructs that "process shall be directed to any sheriff or any constable within the State of Texas."

Tex. R. Civ. P. 15. Citing *Barker CATV Construction, Inc. v. Ampro, Inc.*, 989 S.W.2d 789 (Tex. App.—Houston [1st Dist.] 1999, no pet.), Lydia argues that rule 15, when coupled with rule 99b, which addresses the issuance and form of citation, requires the citation be addressed to both the defendant *and* a constable or sheriff. We disagree.

Rule 15 instructs that all writs and process shall be directed to any sheriff or constable. Tex. R. Civ. P. 15. It does not address the form of the citation, however. Rule 99, on the other hand, specifies what the form of the citation shall include. It requires the citation be directed to the defendant, but says nothing about expressly addressing the citation to any sheriff or constable. Tex. R. Civ. P. 99.

In *Ampro*, the citation was addressed to both the defendant and "to any sheriff or constable or authorized person." *Ampro*, 989 S.W.2d at 791. The court recited that "[f]ailure to direct citation to the defendant as required by the rules results in a void citation, ineffective service, and a void default judgment." *Id.* at 792. In previous opinions, the court had held that citations that were directed to both the defendant and addressed to the sheriff or constable are confusing and do not strictly comply with the rules. *Id.* (citing *Medeles v. Nunez*, 923 S.W.2d 659 (Tex. App.—Houston [1st Dist.] 1996, writ denied); *Faggett v. Hargrove*, 921 S.W.2d 274 (Tex. App.—Houston [1st Dist.] 1995, no writ)). The court reconsidered those prior holdings and in harmonizing rules 15 and 99, determined that the rules do allow citations to be directed to both the defendant and the sheriff or constable. *Id.* at 792-93. The court, however, did not hold that the citation *must* be addressed to both. Like the *Ampro* court, we too hold that citations *must* be expressly directed to the defendant under rule 99 and *may* also be addressed to the sheriff or

9

constable under rule 15, but failure to include the sheriff or constable on the form of the citation will not render it void. Because the citation in this case was directed to Lydia, the defendant, we hold that the citation was not void and overrule Lydia's first issue.

**Default Judgments**

Before we review the sufficiency of the evidence, we must determine the effect of Lydia's failure to file an answer with the trial court and her failure to appear at the termination hearing. Traditionally, no evidence is necessary to support a no-answer default judgment because the defendant's failure to answer is taken as admitting the allegations of the petition. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). Indeed, it is well established that a default judgment operates as an admission of the material facts alleged in the plaintiff's petition. *Id.*; *Stoner v. Thompson*, 578 S.W.2d 679, 684 (Tex. 1979).

Termination proceedings, however, are special. A court's primary consideration in cases involving parental rights is always the best interest of the child. *See* Tex. Fam. Code Ann. § 153.002 (West 2002); *Wiley v. Spratlan*, 529 S.W.2d 616, 617-18 (Tex. Civ. App.—Tyler 1975), *rev'd on other grounds*, 543 S.W.2d 349 (Tex. 1976). Before determining the best interest of a child, the court should ensure that it is as well-informed as the circumstances allow. Such a determination is rarely well-informed without consideration of the evidence and the perspective of the parents. *In re P.M.B.*, 2 S.W.3d 618, 624-25 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Accordingly, the best interest of the child requires that issues be as fully developed as possible, and technical rules of pleading and practice are not of controlling importance. *Lohmann v. Lohmann*, 62 S.W.3d 875, 879 (Tex. App.—El Paso 2001, no pet.); *Sexton v. Sexton*, 737 S.W.2d 131, 133

10

(Tex. App.—San Antonio 1987, no writ); *Little v. Little*, 705 S.W.2d 153, 154 (Tex. App.—Dallas 1985, writ dism'd w.o.j.); *Barrow v. Durham*, 574 S.W.2d 857, 861 (Tex. Civ. App.—Corpus Christi 1978), *aff'd*, 600 S.W.2d 756 (Tex. 1980). Pertinent facts that may affect the best interest of the child should be heard and considered by the trial court regardless of the lack of diligence of the parties in their presentation of information to the court. *C__ v. C__*, 534 S.W.2d 359, 361 (Tex. Civ. App.—Dallas 1976, writ dism'd w.o.j.).

Moreover, because terminating the parent-child relationship is such a drastic measure, termination proceedings include many procedural safeguards not found in other civil trials. For example, termination hearings require clear and convincing evidence, a heightened burden of proof. *See* Tex. Fam. Code Ann. § 161.001 (West 2002); *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). They receive precedence over other civil trials and appeals. Tex. Fam. Code Ann. §§ 105.004, 109.002, 161.202 (West 2002). They allow for the appointment of counsel for the child and indigent parents. *Id.* §§ 107.011-.016 (West Supp. 2004). The trial court has only one year, plus one 180-day extension, within which to render a final order or dismiss the suit. *Id.* § 263.401 (West 2002).

In summary, the termination of parental rights is unlike a traditional civil case, involving only two competing interests, the plaintiff's and the defendant's. The child's interest must also be considered and indeed is of paramount importance. The traditional no-answer default judgment rule takes into consideration only the actions of the defaulting parent; it leaves no room for the trial court to consider the child's best interest. *Cf. Lowe v. Lowe*, 971 S.W.2d 720, 725-27 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (criticizing the application of *Craddock* to suits affecting parent-child relationship). Thus, in light of the special characteristics of termination

11

proceedings and the important interests they are designed to protect, we hold that the traditional rule—that evidence is unnecessary to support a default judgment because the failure to answer is taken as an admission of the allegations in the petition—does not apply to involuntary termination of parental rights proceedings.

As further support for our holding, we note that a petition for the termination of a parent-child relationship is "sufficient without the necessity of specifying the underlying facts if the petition alleges in the statutory language the ground for the termination and that termination is in the best interest of the child." Tex. Fam. Code Ann. § 161.101 (West 2002). Thus, if we were to apply the traditional rule for no-answer default judgments, we would be compelled to hold that the allegations in a petition are legally sufficient to support a termination of parental rights where the respondent has failed to answer, even if there were no supporting facts alleged in the petition or developed at trial. Such a conclusion runs afoul of the oft-cited axiom that a court's primary consideration in these cases is always the best interest of the child, for it cannot be said that the best interest of the child has been served when a court reaches its conclusion based on traditional rules of pleading and practice rather than on a comprehensive review of the available evidence.

Moreover, under the traditional no-answer default judgment rule, a parent's failure to answer a petition to terminate her parental rights would be tantamount to a voluntary relinquishment of parental rights, as the parent would be deemed to have admitted the allegations in the petition, and the court could then terminate the parental rights based solely on the deemed admissions. *Cf. id.* § 161.001(1)(K); *Marywood v. Vela*, 17 S.W.3d 750, 758-59 (Tex. App.—Austin 2000, pet. denied) (holding that petitioner must prove by clear and convincing evidence that affidavit

12

of relinquishment was executed as provided in section 161.103 *and* that termination is in child's best interest). But even voluntary relinquishments of parental rights are subject to strict procedural requirements. For example, a petitioner must prove by clear and convincing evidence that an affidavit of voluntary relinquishment of parental rights was executed in accordance with section 161.103 of the family code; that statute requires, among other things, that the affidavit be witnessed by two credible persons and verified before a person authorized to take oaths. Tex. Fam. Code Ann. § 161.103(a)(2), (3) (West Supp. 2004). Furthermore, unless the affidavit expressly states that it is irrevocable, a parent may revoke a relinquishment in accordance with specified procedures. *Id.* §§ 161.103(g), .1035 (West 2002 & Supp. 2004). And finally, it is well-established that relinquishment affidavits must be executed voluntarily and knowingly. *Marywood*, 17 S.W.3d at 759. Indeed, an involuntarily executed affidavit is a complete defense to a termination suit or decree based solely upon a finding under section 161.001(1)(K) of the family code. *Id.* These requirements must be adhered to before a court may terminate a parent-child relationship based solely on an affidavit of relinquishment. Yet, if a default judgment is rendered, under the traditional rule, a parent has in effect relinquished her parental rights, without the procedural protections provided by statute and without the opportunity to revoke that relinquishment. Such a rule, in the context of termination of parental rights, is too harsh given the constitutional dimension of the rights that are affected in these cases.

Finally, the practical complications of requiring the presentation of evidence before a no-answer default judgment can be rendered in termination cases are slight compared to the interests that must be protected. We note that many well-established legal doctrines include

13

exceptions based on the public policy of the State when a child's best interest is at issue. *In re K.C.*, 88 S.W.3d 277, 280 (Tex. App.—San Antonio 2002, pet. denied) (Hardberger, C. J., dissenting). In addition, requiring the presentation of evidence even though the opposing party has failed to respond is not a novel concept. *Cf. Heine*, 835 S.W.2d at 83 (holding that court rendering default judgment must hear evidence of unliquidated damages); Tex. Fam. Code Ann. § 6.701 (West 2002) (if respondent fails to answer in divorce suit, petition may not be taken as confessed); *Considine v. Considine*, 726 S.W.2d 253, 254 (Tex. App.—Austin 1987, no writ) (holding that allegations in motion to modify conservatorship and support may not be taken as confessed if respondent fails to answer); *see also Klapprott v. United States*, 335 U.S. 601, 612-13 (1949) (reversing default judgment in denaturalization proceeding because rendered without evidentiary hearing). In *Considine*, this Court reasoned that the policy considerations underlying section 6.701 of the family code, which requires the petitioner to prove the allegations in a petition for divorce even if the respondent has failed to answer, should also apply in proceedings to modify provisions in prior divorce judgments that appoint conservators and set child support. 726 S.W.2d at 254; *see also Armstrong v. Armstrong*, 601 S.W.2d 724, 726 (Tex. Civ. App.—Beaumont 1980, writ ref'd n.r.e.) (refusing to apply the traditional default judgment rule in reviewing modification of conservatorship). Similarly, we conclude that it cannot be in the child's best interest to determine whether his relationship with his parent should be terminated based solely on the parent's failure to file timely a response to the petition. We recognize that the parent's failure to respond may affect the trial court's consideration of the issues in the case, but it should not form the sole basis for the trial court's judgment.

14

We suspect that the facts presented in this case are anomalous and that this is a unique case. We note that the Department of Protective and Regulatory Services was not a party in this dispute, and no attorney ad litem was appointed to represent the parent.[3] In addition, Lydia claims her failure to appear was due in part to bad legal advice and misrepresentations made to her by her mother, who initiated this action. Finally, although Lydia filed a motion for new trial after the court rendered its judgment, the court overruled the motion, thus denying Lydia the opportunity to present her perspective about the allegations made against her.[4] Under these unusual circumstances, we would be remiss were we to rely only on the allegations in the petition as a basis for severing this parent-child relationship.

**Legal Sufficiency Review**

Because termination of parental rights is such a drastic remedy and is of such weight and gravity, due process requires the petitioner to justify termination by the heightened burden of proof of "clear and convincing evidence." Tex. Fam. Code Ann. § 161.001; *In re G.M.*, 596 S.W.2d at 846. "Clear and convincing evidence" means "the measure or degree of proof that will produce

---

[3] This statement should not be construed to suggest that an attorney ad litem should be appointed to represent a parent whose parental rights are subject to termination without a showing of indigency. The record in this case does not reveal whether the issue of Lydia's indigency was ever raised before the court. We merely observe that often, even if the parent is not present at trial, an attorney ad litem usually is, thereby appearing for the parent and protecting the parent's rights. *In re K.C.*, 88 S.W.3d 277, 279 (Tex. App.—San Antonio 2002, pet. denied) (holding that because party's attorney appeared at trial, even though party did not, there was no default judgment; case was tried on the merits).

[4] Because we are reversing based on Lydia's legal insufficiency point, we do not reach her complaint that the trial court erred in failing to grant her motion for new trial and express no opinion on this issue.

in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2002); *accord In re C.H.*, 89 S.W.3d 17, 19, 25 (Tex. 2002); *In re G.M.*, 596 S.W.2d at 847. This standard is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d at 847.

The heightened "clear and convincing evidence" burden of proof alters our appellate legal sufficiency standard of review. *In re J.F.C.*, 96 S.W.3d 256, 256-66 (Tex. 2002); *In re C.H.*, 89 S.W.3d at 25. This is because our traditional no-evidence standard of review does not adequately protect the parents' constitutional interests. *In re J.F.C.*, 96 S.W.3d at 264-65. In conducting our legal sufficiency review in termination cases, we must review all the evidence in the light most favorable to the finding and the judgment to determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven. *Id.* at 265-66. In other words, we must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* at 266. We must also disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding, as this could skew the analysis of whether there is clear and convincing evidence. *Id.* We must consider undisputed evidence even if it does not support the finding. *Id.* Following this review, if we determine that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient and render judgment in favor of the parent. *Id.*

16

**Termination of Parental Rights**

A court may terminate parental rights if it finds that: (1) the parent has engaged in any of the specific conduct enumerated in the family code as grounds for termination, and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *Richardson v. Green*, 677 S.W.2d 497, 499 (Tex. 1984). The fact finder must determine that clear and convincing evidence supports both elements; proof of one element does not relieve the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)). The child's best interest is not the *sole* goal of involuntary termination proceedings; termination "may not be based solely upon what the trial court determines to be the best interest of the child." *Id.*

The trial court's final order states that it found by clear and convincing evidence (1) that Lydia has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child, (2) that she failed to support the child in accordance with her ability during a period of one year ending within six months of the date of the filing of the petition, and (3) that termination of the parent-child relationship between Lydia and her child is in the best interest of the child.

### *Dangerous Conduct*

Under section 161.001(1)(E), a parent's rights may be terminated if it is established by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(1)(E). Under subsection (E), we look exclusively

17

to the parents' conduct, including actions, omissions, or the parents' failure to act. *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). Termination based on this subsection must be based on more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" that endangered the child's physical and emotional well-being is required. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 534 (Tex. 1987); *In re D.M.*, 58 S.W.3d at 811. "Endanger" means to expose to loss or injury, to jeopardize. *In re M.C.*, 917 S.W.2d 268, 270 (Tex. 1996). The endangering acts need not have been directed at the child, or have caused an actual injury or threat of injury to the child to constitute conduct that endangers the child's physical or emotional well-being. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

At the termination hearing, Jackie was the only witness who testified. She was asked by her attorney whether Lydia "engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical and emotional well being of the child," to which Jackie answered, "Yes." The child's attorney ad litem then cross-examined Jackie and asked for "some specifics about what Lydia has done to make you believe it's best that her parental rights be terminated." Jackie responded that Child Protective Services had previously investigated Lydia, and since then, Lydia "has not really made any changes in that area." According to Jackie, Lydia "still doesn't have a job. She has left them and she has another baby by another man that she's lived with that I believe is involved in drugs, and she comes to visit [K.W.] on occasion, but she takes no responsibility to be her mother." The ad litem further inquired whether the CPS investigation had to do with "an issue of physical neglect," to which Jackie responded, "Yes. She left [K.W.] alone by herself," when she was about six months old. This was the totality of the evidence adduced to

18

support the allegation that Lydia engaged in conduct or placed her child with persons who engaged in conduct that endangered her daughter's well being.

Viewing the testimony in the light most favorable to the judgment, as we must, we conclude that a fact finder could not reasonably have formed a firm belief or conviction that this ground for termination was proven. In attempting to support the conclusory statement that Lydia engaged in conduct or placed her child with someone who engaged in conduct that endangered her child, Jackie sparingly described events from the past that led to CPS's involvement and Lydia's current conservatorship status. Jackie's testimony revealed about CPS's prior involvement only that Lydia had at one time left her child alone when the child was six months old. The record also reveals, however, that following that incident (about which we know very little), CPS did not seek termination of Lydia's parental rights, and indeed, was ultimately dismissed from the suit. Moreover, Lydia was named possessory conservator of her child. There is no evidence that any of Lydia's conduct directly resulted in endangerment to the child's physical or emotional well-being. Indeed, there is no evidence that the child's physical or emotional well-being was ever endangered. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied) (holding there must be evidence of endangerment to child's physical or emotional well-being as *direct result* of parent's conduct). Additionally, termination under this subsection must be based on more than a single act or omission; evidence of a voluntary "course of conduct" is required. *Id.* This simply was not established here. Finally, Jackie's statement that she believes Lydia lives with a man who is involved in drugs is no more than a mere surmise or suspicion, which is not the same as evidence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). We therefore hold that there is no

19

legally sufficient evidence to support the trial court's finding that Lydia engaged in conduct or placed her child with others who engaged in conduct that endangered the child's well-being.

### *Failure to Support*

Under section 161.001(1)(F), the parent-child relationship may also be terminated if the court finds by clear and convincing evidence that the parent has failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition. Tex. Fam. Code Ann. § 161.001(1)(F) (West 2002). With regard to this basis for termination, Jackie offered no evidence, other than to track the statutory language and assert that Lydia "failed to support the child in accordance with her ability, during the period of one year, ending within six months of the date of filing this petition." We hold that no legally sufficient evidence exists to support the trial court's finding that Lydia failed to support her child in accordance with her ability for a period of one year.

### *Best Interest of the Child*

Although a strong presumption exists that the best interest of a child is served by keeping conservatorship in the natural parent, this presumption may be overcome by clear and convincing evidence of the parent's present unfitness. *In re D.M.*, 58 S.W.3d at 814. The supreme court has listed several factors to be considered by a court in determining whether this presumption has been rebutted: (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the person seeking custody, (5) programs available to assist those persons in

20

promoting the child's best interest, (6) plans for the child by those individuals or by the agency seeking custody, (7) the stability of the home or the proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. In addition, a fact finder may infer that past conduct endangering the well being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.*, 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, and *In re C.H.*, 89 S.W.3d 17.

Again, the only evidence Jackie provided regarding the child's best interest was her own testimony that she believed termination of Lydia's parental rights and adoption of the child by Thomas and Iris Cummins would be in the child's best interest. No specifics were provided with regard to any of the enumerated factors listed above. And no evidence was adduced about the Cummins or their relationship with the child. We conclude that this testimony amounts to no evidence of the best interest of the child.

## CONCLUSION

We conclude that although the citation failed to include Jackie's name as the petitioner, the record reveals that Lydia was properly served. We therefore overrule Lydia's first issue. Because we hold that the evidence is legally insufficient to support any of the bases relied on by the trial court in terminating Lydia's parental rights, we sustain Lydia's third and fourth issues.[5]

---

[5] Because we are reversing for legally insufficient evidence, we do not reach Lydia's remaining issues. *See* Tex. R. App. P. 47.1 (opinion should be as brief as practicable and address every issue necessary to final disposition of appeal).

Generally, when a legal insufficiency point is sustained, the reviewing court renders judgment in favor of the party bringing the point of error. *Heine*, 835 S.W.2d at 86; *Flores v. Brimex Ltd. P'ship*, 5 S.W.3d 816, 821 (Tex. App.—San Antonio 1999, no pet.). When the interests of justice require a new trial for further development of the facts, however, the case can be remanded. Tex. R. App. P. 43.3(b); *Flores*, 5 S.W.3d at 821. While we recognize the child's interest in having a quick and final resolution of this case and the need for stability in the child's life, we believe that because this case presented us with an issue of first impression in Texas and because we have announced a new rule in addressing that issue, the interests of justice are better served by remanding this case for further proceedings. It is also in the child's best interest for the trial court to fully develop the evidence and render a judgment following consideration of the evidence. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed: January 8, 2004