

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00040-CV

IN THE INTEREST OF J.B., M.B.,
AND E.B., CHILDREN

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2012-70604-431

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In four issues, appellant A.P.B. appeals the trial court's November 5, 2014

default judgment modifying his child support obligation, confirming child support

---

[1]*See* Tex. R. App. P. 47.4.

arrearages, and awarding attorney's fees to appellee L.M.B. We reverse the trial court's default judgment and remand the case for a new trial.

## II. Procedural Background

The parties divorced in July 2012. Eleven months later, L.M.B. filed her "Amended Motion To Modify Parent-Child Relationship, To Enforce Original Order (Child Support), And Notice Of Hearing For Temporary Orders," seeking child support under the family code child support provisions, *see generally* Tex. Fam. Code Ann. §§ 154.001–.243 (West 2014), in addition to reimbursement for some of the children's daycare and medical expenses under the divorce decree's provisions.[2] L.M.B. also sought reimbursement for other costs that A.P.B. had been allocated in the divorce decree but had not paid, and she sought attorney's fees, expenses, costs, and post-judgment interest. The last two pages of the motion contained L.M.B.'s "NOTICE OF HEARING ON MOTION," which was set for July 24, 2013. The last page of the motion contained a certificate of conference in which L.M.B.'s counsel certified that A.P.B. had been "contacted"

---

[2]The divorce decree made the parties joint managing conservators of their three children with the duty to support the children "during their respective periods of possession" as well as to pay 50% of the children's expenses for daycare, education, extracurricular activities, "and all other expenses that provide for the nurture and well being of the children, other than expenses incurred during normal periods of possession." The decree also provided for the parties to share responsibility for the children's health insurance.

by phone and email on June 12, 2013, to discuss acceptable times for the hearing but that A.P.B. had not responded.[3]

L.M.B.'s attorney filed the motion electronically on June 26, 2013, and citation issued on June 27, 2013. The citation sets out the cause number, A.P.B.'s full name, and his address, "at Dallas Fire Department Station 29[,] 9830 Shadow Way[,] Dallas[,] Tx 75243 (or wherever he/she may be found)," provides notice that if he failed to file a written answer, a default judgment could be taken against him, and lists "Amended Motion to Modify Parent-Child Relationship, To Enforce Original Order (Child Support), And Notice Of Hearing For Temporary Orders" beside the heading entitled "Document." The return of service was filed on July 11, 2013, along with an affidavit of service, which states, in pertinent part:

> On JUNE 27, 2013 P.M., at 4:30 P.M. *I received a CITATION* to be delivered to [A.P.B.] at Dallas Fire Department Station 29[,] 9830 Shadow Way[,] Dallas[,] Tx 75243[.]

> On June 28, 2013 at 8:30 a.m. I attempted to deliver *the documents* to above address to [A.P.B.]. [H]e was not there. He got off duty at 7:00 a.m. He will not be back until 7:[00] a.m. Sunday morning and will get off duty at 7:00 a.m. Monday July 1st, 2013[.]

> On July 1, 2013 at 5:30 a.m. I attempted to deliver *the documents* to above address to [A.P.B.] and again he was not there. The guy who answered the door said he had been sent to another Station off of Northwest Hwy and Shiloh. That is all he would tell

---

[3]The certificate of conference is ambiguous as to whether A.P.B. was actually contacted and then failed or refused to respond to questions posed about scheduling the hearing, or whether the attorney merely attempted to contact A.P.B. by telephone and email but received no response to these attempts.

3

me. He made one other comment, that I probably would not get over there in time before he would be off duty again.

On July 1, 2013 I ran a search to find a Fire Station in the Northwest Hwy and Shiloh area. I came up with Station 39 at 2850 Ruidosa Dallas, Tx. 75228. [A.P.B.] was there and I delivered *the Documents* to him at 6:05 a.m[.] [Emphasis added.]

On July 24, 2013, L.M.B. obtained temporary orders for child support, arrearages, and attorney's fees. Although the temporary orders state that A.P.B. appeared and announced ready, the docket entry reflects that he failed to appear at the hearing and that the temporary orders were entered by default.[4]

Likewise, A.P.B. did not appear at the hearing before the entry of the November 5, 2014 default judgment,[5] which recited that A.P.B. "though served proper notice failed to make any answer or to appear[6] and wholly defaulted."

---

[4]The reporter's record of the July 24, 2013 hearing confirms that A.P.B. did not appear at the hearing.

[5]During the interim, L.M.B. had requested that A.P.B. produce documents and disclosures. When A.P.B. failed to respond to these discovery requests, L.M.B. filed a motion to compel discovery and for sanctions, followed by a second motion to compel discovery and for sanctions, none of which A.P.B. answered. On April 14, 2014, the trial court issued an order compelling discovery and for sanctions. On June 4, 2014, L.M.B. filed a petition for contempt regarding A.P.B.'s discovery violations. The trial court issued a writ of capias for A.P.B. when he failed to appear at the July 25, 2014 show-cause hearing.

[6]A.P.B. apparently executed a bond on September 21, 2014 and filed it on October 10, 2014 in response to the trial court's July 2014 order of capias. We note that if A.P.B.'s posting of bond amounted to an appearance in the case, then he had a due process right to notice of the default judgment hearing. *See Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 813 (Tex. 2012) ("The Due Process Clause of the Fourteenth Amendment requires that once a defendant makes an appearance, that defendant is entitled to notice of the trial

4

One week later, however, on November 14, 2014, A.P.B. appeared at a contempt hearing.[7] On December 5, A.P.B. filed a motion for new trial that was overruled by operation of law. The trial court made findings of fact and conclusions of law on December 31, 2014. In its findings, the trial court found that A.P.B. did not appear at the November 5, 2014 hearing; it also made various findings about the parties' net resources.

## III. Discussion

In his first issue, A.P.B. contends that service of process of the underlying lawsuit was insufficient to withstand his direct attack on the default judgment. L.M.B. replies that the process server's affidavit is sufficient to show that A.P.B. was served.

The law abhors default judgments. *Indus. Models, Inc. v. SNF, Inc.*, No. 02-13-00281-CV, 2014 WL 3696104, at *2 (Tex. App.—Fort Worth July 24, 2014,

---

setting."). The record does not reflect whether A.P.B. was given notice of the November 5 hearing, and the parties have not briefed whether he was entitled to such notice. A.P.B. affirmatively states in his brief that he "did not appear before the trial court at any time between the date [a]ppellee originally filed the current lawsuit and entry of the Default Order." "In a civil case, the court will accept as true the facts stated [in an appellant's brief] unless another party contradicts them." Tex. R. App. P. 38.1(g).

[7]The trial court noted that A.P.B. was appearing at the November 14 hearing because, as a result of the capias warrant for failing to appear at the July 25 show cause hearing, A.P.B. had been arrested. After posting bond, he was notified of the November 14 hearing. At the hearing, the trial court informed A.P.B. that he was "in custody" and that "it would be a felony to leave [the courtroom] without permission." According to the trial court's docket entries, A.P.B. was ultimately found in contempt and sentenced to three days in jail on March 20, 2015.

no pet.) (mem. op.). For a default judgment to withstand direct attack, strict compliance with the rules governing service of process must affirmatively appear on the face of the record. *Id.* at *3; *see Primate Constr. Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994); *see also PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) (defining "direct attack" as an appeal, a motion for new trial, or a bill of review). If the record does not show strict compliance with the rules of civil procedure governing issuance, service, and return of citation, then the attempted service of process is invalid, and the judgment must be reversed.[8] *Indus. Models*, 2014 WL 3696104, at *3.

A return of service must include, among other things, a description of what was served. Tex. R. Civ. P. 107(b)(3). The return of service is not a trivial, formulaic document but rather has long been considered prima facie evidence of the facts recited therein. *Primate*, 884 S.W.2d at 152 (stating that the supreme court has required strict compliance with the rules for service of citation for "well over a century"). That is, "[t]he weight given to the return is no less when the recitations impeach the judgment than when they support it." *Id.* The rules of civil procedure allow for liberal amendment of the return of service to show the

---

[8]When a default judgment is attacked by a motion for new trial in the trial court, the focus is on the critical question, "Why did the defendant not appear?" *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 573–74 (Tex. 2006). If the answer to this critical question is, "Because I didn't get the suit papers," the default judgment generally must be set aside. *Id.* at 574. The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the party moving for the default judgment. *Primate*, 884 S.W.2d at 152.

6

true facts of service. *Id.* at 153 (citing Tex. R. Civ. P. 118). In *Primate*, the officer's return indicated that the defendant was served with the original petition—in which the defendant was not a named party—while the citation indicated that a second-amended petition was attached. *Id.* at 152–53. In *Primate*, as in this case, the return was not amended prior to issuance of the default judgment. *See id.* at 153. The supreme court reversed, concluding that proper service had not been affirmatively shown on the record. *Id.*

Here, the affidavit of service reflects that "the Documents" were delivered to A.P.B. on July 1, 2013, at 6:05 a.m. at Fire Station 39, 2850 Ruidosa, Dallas, Texas, 75228. But the affidavit does not specify *what* documents were delivered. *See, e.g.*, *Shamrock Oil Co. v. Gulf Coast Natural Gas, Inc.*, 68 S.W.3d 737, 739 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (stating that although rule of civil procedure 107 does not expressly require the return of service to list documents served with the citation, "unless it does so it is impossible to tell if there has been compliance with the service rules").

L.M.B. argues that the affidavit was sufficient, contrasting these facts to *In re Z.J.W.*, 185 S.W.3d 905, 907 (Tex. App.—Tyler 2006, no pet.),[9] and relying on

---

[9]In *Z.J.W.*, the court reversed the trial court's default judgment establishing paternity and setting child support when the process server wholly failed to endorse the process with the day and hour on which he received it, preventing the State from showing strict compliance with rule of procedure 105. 185 S.W.3d at 906–07. The court reiterated that "strict compliance" means literal compliance with the rules, despite the State's argument that these were just minor details for which substantial compliance was sufficient. *Id.* at 907–08. The court defined substantial compliance as sufficient when the citation and return show with

7

*Williams v. Williams*, 150 S.W.3d 436 (Tex. App.—Austin 2004, pet. denied),[10] to support her argument that "the Documents" referred to in the affidavit could only have meant the motion and citation, which contained the name of the motion.

That is, L.M.B. would require us to construe the citation, motion, and affidavit together to infer, rather than read from the face of the affidavit, what was served on A.P.B.[11] But this goes beyond mere "trivial error." *See Shamrock*, 68 S.W.3d at 739 ("[W]e believe the officer's return must show service of the correct pleading on the Meltons."); *cf. Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926

---

reasonable certainty that the citation was served. *Id.* at 907. It cited examples of substantial compliance as omitting a petitioner's name from the citation when there was no confusion about whether the correct respondent was actually served; omitting an accent mark and substituting the symbol "@" for the word "at"; and when the petition, citation, and return reflected a typo in the registered agent's name—the petition and citation listed him as "Philippe Petitfrere" but the return listed him as "Philipee Petitfreere." *Id.* at 907 (counting cases).

[10]In *Williams*, the trial court granted a default judgment to a grandmother who had filed a petition to terminate the parent-child relationship between her daughter and her grandchild. 150 S.W.3d at 441. The court held that the record reflected that the daughter was properly served, despite the failure of the citation to include the grandmother's name, because there was no confusion regarding who filed the suit; it nonetheless reversed the default judgment after concluding that the evidence was legally insufficient to support terminating her parental rights. *Id.* at 441, 444–45, 452.

[11]Although the record may reflect that A.P.B. was actually aware that L.M.B. was seeking child support, actual notice is not a substitute in a no-answer default situation, which requires that the face of the record show strict compliance with the type of service used. *See Indus.*, 2014 WL 3696104, at *3 ("Even when a defendant has received actual notice of a pending lawsuit, a default judgment rendered upon defective service cannot stand unless the defendant otherwise enters a general appearance before the entry of the judgment.").

8

S.W.2d 608, 612 (Tex. App.—Corpus Christi 1996, writ denied) (holding return of service sufficient when it referred to the plaintiff's original petition as "the Petition attached" to the citation); *Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 871 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (op. on reh'g) (holding return of service sufficient when it referred to the original petition as a complaint, "a term clearly synonymous with petition"). To hold otherwise under these circumstances would put this court on a slippery slope rife with danger to the due process our procedural rules were designed to protect.[12] Moreover, while the law would have permitted L.M.B. to simply file an amended return of citation prior to taking the default judgment, thereby clarifying for the record what documents were served upon A.P.B., L.M.B. did not avail herself of this opportunity. *See Primate*, 884 S.W.2d at 153.

Therefore, we sustain A.P.B.'s first issue. Based on our disposition of A.P.B.'s first issue, we need not reach his remaining three issues. *See* Tex. R. App. P. 47.1.

---

[12]That is, while strict compliance does not require "obeisance to the minutest detail," as we pointed out in *Industrial Models*, cases justifying slight deviation from procedural rules under this rationale mostly concern misnomer, misspelling, mistaken capitalization, or similar errors and not a complete absence of information required to determine, from the face of the record, that the proper pleadings have been served upon the proper party and, thus, that due process concerns have been satisfied. 2014 WL 3696104, at *5; *cf. Herbert*, 915 S.W.2d at 871.

9

## IV.  Conclusion

Having sustained A.P.B.'s dispositive issue, we reverse the trial court's judgment and remand the case for a new trial.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DELIVERED:  December 23, 2015

10