

## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-17-00059-CV

_____

JOE DRAY RUSHING, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2016-522,855; Honorable Les Hatch, Presiding

January 23, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

This is a restricted appeal following a default judgment. Raising four issues, Appellant, Joe Dray Rushing, contends (1) he has met the requirements necessary for a restricted appeal, (2) the trial court erred in entering a default judgment because service of process was not conducted in strict compliance with Rule 99 of the Texas Rules of Civil

Procedure, (3) the evidence is legally insufficient to support the forfeiture of coins seized, and (4) the evidence is legally insufficient to support the forfeiture of guns seized. We affirm the judgment of the trial court.

BACKGROUND

On October 13, 2016, Appellee, the State of Texas, instituted a forfeiture proceeding against Rushing pursuant to the provisions of chapter 59 of the Texas Code of Criminal Procedure contending that certain personal property seized by the Lubbock Police Department on September 22, 2016, was contraband subject to foreclosure.[1] That same day, a deputy district clerk of the Lubbock County District Clerk's Office issued citation to be served on Rushing at 7601 Canton Ave., Lubbock, Texas. An *Officer's Return*, attached to the original citation, filed with the Lubbock County District Clerk's Office on October 19, 2016, indicates that the citation, with the *Plaintiff's Original Notice of Seizure and Intended Forfeiture and First Request for Discovery* attached, was served on Rushing at 11:00 a.m., on October 14, 2016, at 1901 Texas Ave., Lubbock, Texas.

On Monday, November 14, 2016, the State of Texas presented to the trial court a *Motion for Default Judgment.* Affixed to the motion were copies of (1) *Plaintiff's Original*

---

[1] An inventory of the personal property seized, attached to *Plaintiff's Original Notice of Seizure and Intended Forfeiture and First Request for Discovery,* lists the following property: (1) one SAR 1, semi-automatic 7.62 assault rifle with magazines, serial number S1-38905-2001, (2) one Anderson AM-15, semi-automatic .223 caliber assault rifle with magazines, serial number 14208F14, (3) one Colt Python, .357 magnum pistol with a four-inch barrel, engraved, serial number 61760, (4) one Colt Python, .357 magnum pistol with a six-inch barrel, serial number 67674E, (5) one Smith & Wesson Texas Rangers Ed., .357 magnum pistol with case and knife, serial number TR368, (6) 3,611 rounds of 7.62 mm rifle ammunition, (7) 2,048 rounds of .223 rifle ammunition, (8) three American coin sets, (9) three Wild West coin sets, (10) one U.S. Silver Dollar coin set, (11) one NRA coin set, (12) nine silver dollars, (13) ten $1.00 gold coins, (14) five rare 50-cent pieces, (15) six rare coins, (16) ten rare nickels, (17) seven rare dimes, (18) one rare penny, (19) eighty-eight 50-cent pieces, (20) twelve rare $2.00 bills, (21) one Liberty gun safe, and (22) two Canon camera lenses.

*Notice of Seizure and Intended Forfeiture and First Request for Discovery,* (2) the *Seizure Affidavit* of Detective Walter Scott, (3) a schedule of seized property, and (4) the original *Search Warrant* leading to the seizure of the property. The court's file also contained the original citation with return of service. No further evidence was presented. Thereafter, on that date, the trial court entered a *Default Judgment* finding that the property in question was contraband and forfeiting Rushing's interest in said property to the State of Texas "to be distributed in accordance with the inter-local agreement between the LUBBOCK COUNTY DISTRICT ATTORNEY and the LUBBOCK POLICE DEPARTMENT in the manner prescribed by Section 59.06, Texas Code of Criminal Procedure." Rushing did not timely file a notice or appeal, a request for findings of fact and conclusions of law, or any other post-judgment motions.

On February 10, 2017, Appellant filed his *Notice of Appeal* with the Lubbock County District Clerk. Following a series of procedural maneuvers not relevant to the disposition of this matter, this court construed that notice as a notice of restricted appeal. *See* TEX. R. APP. P. 25.1(d)(7), 30.

RESTRICTED APPEALS

In order to prevail on a restricted appeal, Rushing must establish that: (1) he filed notice of the restricted appeal within six months after the judgment was signed; (2) he was a party to the underlying lawsuit; (3) he did not participate in the hearing that resulted in the judgment being complained of; (4) he did not timely file any notice of appeal, post-judgment motion, or request for findings of fact and conclusions of law; and (5) the error being complained of is apparent on the face of the record. *See Alexander v. Lynda's*

3

*Boutique*, 134 S.W.3d 845, 848 (Tex. 2004). As to issues two, three, and four, only the last element is at issue in this proceeding.

Here, the State does not contest the fact that Rushing filed a notice of appeal within six months after the judgment was signed, that he was a party to the underlying lawsuit and he did not participate in the hearing that resulted in the judgment being complained of, and that he did not timely file a notice of appeal, request for findings of fact and conclusions of law, or any other post-judgment motion. In fact, the State does not even contest whether the *claimed* error is apparent on the face of the record. What the State contests is whether Rushing's complaints amount to error at all.

ANALYSIS

By his first issue, Rushing contends he has met the procedural requirements to file a restricted appeal. Because the State does not contest that issue, it is moot.

As to Rushing's second issue, he contends defective service of process is error apparent on the face of the record. Specifically, he contends the service of process in this proceeding is defective because it does not strictly comply with the provisions of the Texas Rules of Civil Procedure. More specifically, he contends the citation did not contain the verbatim language mandated by Rule 99, subsection (c) of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 99(c). In particular, Rushing claims the notice contained in the citation as served differed from the notice mandated by Rule 99(c).

The discrepancies between the notice as mandated and the notice as given are, perhaps, best illustrated by this side-by-side comparison:

4

| Texas Rules of Civil Procedure, Rule 99(c): | Citation Issued: |
|---|---|
| You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. | You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk *of the court* who issued this citation by ~~10:00~~ *10 o'clock* a.m. on the Monday next following the expiration of *20 (*twenty*)* days after you ~~were~~ *have been* served with this citation and ~~petition~~*, Original Notice of Seizure and Intended Forfeiture and First Request for Discovery,* a default judgment may be taken against you.<br><br>(Additions italicized and deletions struck-through). |

In order for a default judgment to withstand a direct attack via a restricted appeal, *strict compliance* with the rules governing the issuance and service of process must affirmatively appear on the face of the record.  *See PNS Stores, Inc. v. Rivera,* 379 S.W.3d 267, 274 (Tex. 2012); *Primate Const. Inc. v. Silver,* 884 S.W.2d 151, 152 (Tex. 1994).  In the context of a restricted appeal, this rule is so strictly followed that there are no presumptions in favor of valid issuance, service, and return of citation from no-answer default judgments.  *Mc Phase II Owner*, *LLC v. TI Shopping Ctr.*, *LLC*, 477 S.W.3d 489, 491 (Tex. App.—Amarillo 2015, no pet.) (citing *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.,* 186 S.W.3d 571, 573 (Tex. 2006) (per curiam)).

Therefore, turning our attention to the arguments at hand, the question is: does "strict compliance" require that the notice actually given be verbatim to the notice required by Rule 99(c)?  As can be seen from the side-by-side comparison above, the notice contained in the citation as issued differs from the notice mandated by Rule 99(c) in five ways:  (1) the citation refers to the *clerk of the court*; whereas, Rule 99(c) refers simply to

the *clerk*; (2) the citation states the time deadline as *10 o'clock*; whereas, Rule 99(c) refers to the time as *10:00 a.m.*; (3) the citation refers to the expiration of *20 (twenty)* days; whereas, Rule 99(c) refers to *twenty* days; (4) the citation references when *you . . . were served*; whereas Rule 99(c) references when *you . . . have been served*; and (5) the citation refers to service of the *Original Notice of Seizure and Intended Forfeiture and First Request for Discovery*; whereas Rule 99(c) simply refers to the *petition.* Relying on *Becker v. Russell*, 765 S.W.2d 899, 901 (Tex. App.—Austin 1989, no writ), Rushing contends that "virtually any deviation will be sufficient to set aside the default judgment in a restricted appeal." *Becker*, however, did not involve a mere difference in style or word choice. In *Becker,* the record showed that the appellant was not served a copy of the trial court's order of substituted service, a condition specifically required by the trial court. The Austin Court of Appeals reasoned that *any* deviation from the express terms of the order authorizing substituted service of citation warranted reversal of the default judgment based upon that service.

Here, we are faced with five minor deviations amounting to nothing more than style and the clerk's choice of words. Nothing was lost in translation. The *clerk of the court* is the *clerk* who issued citation regardless of the additional surplusage. Likewise, *10 o'clock a.m.* is the same as *10:00 a.m.* to any English-speaking person capable of understanding Arabic numbers. Similarly, no one is confused by the difference between *twenty* and *(20) twenty.* In the context of this notice, the difference between *were* and *have been* is nothing more than a grammatical preference with no change in the meaning or concept of the notice being given. And, finally, the difference between the word *petition* and the actual title of the petition itself, *Original Notice of Seizure and Intended Forfeiture and*

6

*First Request for Discovery,* is nothing more than a pellucid substitution of names. Taken individually or together, there is nothing significant about these discrepancies. They are not misleading, inaccurate, or incongruous. "Even strict compliance does not require such absolute obeisance to the minutest detail." *See Herbert v. Greater Gulf Coast Enters.*, 915 S.W.2d 866, 871 (Tex. App.—Houston [1st Dist.] 1995, no writ). *See also Williams v. Williams*, 150 S.W.3d 436, 443-44 (Tex. App.—Austin 2004, pet. denied). Therefore, as to Rushing's second issue, we conclude the complained-of discrepancies with respect to the citation issued in this case do not constitute a violation of the requirement of strict compliance. Because these discrepancies do not constitute error, they do not establish "error apparent on the face of the record." Issue two is overruled.

By his third and fourth issues, Rushing contends the evidence is legally insufficient to support the forfeiture of coins seized (issue three) and guns seized (issue four). While a restricted appeal affords an appellant the same scope of review as an ordinary appeal, including a challenge to the sufficiency of the evidence supporting the contested order or judgment; *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam) (discussing a writ of error review), our review is still "limited to errors apparent on the face of the record." *Drewery Const. Co.*, 186 S.W.3d at 573; *Lynda's Boutique*, 134 S.W.3d at 848. For the purpose of our review, "the face of the record" includes all documents and papers on file in the appellate record, including the clerk's and reporter's records, if any. *See Norman Commc'ns*, 955 S.W.2d at 270.

In reviewing a record to determine if legally insufficient evidence is apparent from the face of that record, an appellate court may make that finding only when (a) there is a

complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question. *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030, 124 S. Ct. 2097, 158 L. Ed. 2d 711 (2004).

Therefore, as a threshold question, we must determine whether Rushing's claim of legal insufficiency of the evidence is a matter apparent on the face of the record. To make that determination, we must evaluate the record against the elements of a valid forfeiture proceeding to determine the necessary "vital facts." In that regard, we start with the premise that in this case the State's right to bring a forfeiture proceeding exists by virtue of statute, chapter 59 of the Texas Code of Criminal Procedure, and not by virtue of the constitution or common law. *See* TEX. CODE CRIM. PROC. ANN. arts. 59.01-.14 (West 2018). *See also 1976 Harley Davidson Motorcycle v. State,* 106 S.W.3d 398, 401 (Tex. App.—Corpus Christi 2003, no pet.); *State v. Benavides,* 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied). As such, we employ rules of strict construction. *1976 Harley Davidson Motorcycle,* 106 S.W.3d at 402; *State v. Lot 10, Pine Haven Estates,* 900 S.W.2d 400, 402 (Tex. App.—Texarkana 1995, no writ).

Pursuant to chapter 59, property, including currency, is subject to seizure and forfeiture if it is found to be "contraband." TEX. CODE CRIM. PROC. ANN. art. 59.02(a) (West 2018). Contraband is property used or intended to be used in the commission of certain felonies or proceeds derived from those felonies. TEX. CODE CRIM. PROC. ANN. art.

8

59.01(2)(A)-(D) (West 2018); *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 692 (Tex. 2004). For purposes of this particular forfeiture proceeding, the requisite felony offense alleged was possession of a controlled substance—hallucinogenic mushrooms containing psilocybin—Penalty Group 2. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.116 (West 2017); TEX. CODE CRIM. PROC. ANN. art. 59.01(2)(B)(1) (West 2018). Additionally, in order to forfeit property, the State must show a "substantial connection or nexus" between the property and the illegal activity." *$27,920.00 in U.S. Currency v. State*, 37 S.W.3d 533, 535 (Tex. App.—Texarkana 2001, pet. denied).

In this case, the face of the record includes the *Seizure Affidavit* of Detective Scott, wherein he contends the guns were used or intended to be used in the commission of a felony under chapter 481 of the Texas Health and Safety Code. He also contends that both the guns and the coins were proceeds gained from the commission of a felony under that chapter or they were acquired with proceeds gained from the commission of a felony under that chapter. Detective Scott further notes that the guns were located in the same area where the controlled substance was being grown. In addition to the controlled substance itself and the items seized, the search also revealed a "substantial quantity of growing apparatus, paraphernalia, and literature regarding the production of mushrooms which contain psilocybin, a known hallucinogen." Detective Scott further relied upon the statement of an informant who had purchased illegal mushrooms from Rushing.

As to the "substantial connection or nexus" element, the affidavit of Detective Scott stated that controlled substances are not only purchased with U.S. currency, but they are also "bartered for with items of value, such as the items being seized listed in the schedule

9

of this affidavit." He further stated that "firearms are often possessed and carried by persons who manufacture and deliver controlled substances to protect the substances and the proceeds of sale of said substances." Detective Scott also stated that, based on his experience as a narcotics officer, the items seized were "proceeds from the sales of controlled substances, whether bartered or purchased with currency."

Because these uncontested facts establish a prima facie case for forfeiture of the seized items as contraband, legal insufficiency of the evidence is not an error apparent from the face of the record. Accordingly, issues three and four are overruled.

CONCLUSION

The trial court's judgment is affirmed.


                                        Patrick A. Pirtle
                                           Justice