TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00381-CV






Santos Cervantes, Esther Cervantes, David Cervantes and Martha Cervantes, Appellants


v.


Rosie Cervantes, Appellee






FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT

NO. 26,484, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellee, Rosie Cervantes, obtained a default judgment ordering appellants Santos,
Esther, David, and Martha Cervantes to specifically perform their promise to convey property and
to pay attorney's fees and costs in her suit for fraud, fraud in the inducement, breach of contract,
real estate fraud under section 27.01 of the business and commerce code, and knowing and
intentional misrepresentation. Appellants filed a motion for new trial, which the trial court denied. 
In this appeal, appellants argue that the trial court erred in denying their motion for new trial because: 
(1) the return of service was defective, (2) appellants established all elements to obtain a new trial
under Craddock v. Sunshine Bus Lines, Inc., 133 S.W.2d 124 (Tex. 1939), and (3) Rosie (1)
 is not
entitled to recover from appellants as a matter of law. We will reverse the trial court's judgment. 


FACTUAL AND PROCEDURAL BACKGROUND

 This case arises out of a dispute between members of the Cervantes family over
three acres of land located in Bastrop County. The parties dispute the circumstances under
which Rosie and her late husband, Sam, moved onto the property. Appellants allege that Santos and
Esther invited their son, Sam, and Rosie to move to the property to help them through financial
difficulties caused by Sam's terminal illness and the "criminal troubles" of some of Rosie and Sam's
grandchildren. Appellants assert that they made no promise to give the property to Rosie and Sam. 
Rosie alleges that Santos promised to give her and Sam the deed to the property if they would
move there from Houston, which they did after purchasing a mobile home, setting up water and
electric service, and installing a septic system and water well. Rosie and Sam hired an attorney in
October 2006 after appellants continued to refuse their requests for a deed to the property. On
November 2, 2006, Rosie and Sam filed a request to take Sam's deposition before suit; however,
Sam died on November 15, one day before the court signed the agreed order authorizing his
deposition.

 On April 5, 2007, Santos filed a complaint for eviction against Rosie in a
precinct justice court of Bastrop County. Rosie filed a plea to the jurisdiction asserting that Santos's
claim was necessarily dependent upon the determination of title to real property, an issue within the
district court's exclusive jurisdiction. The justice court dismissed the case for lack of jurisdiction. 
On April 24, Rosie sued appellants in the Bastrop County District Court for fraud, fraud in the
inducement, breach of contract, real estate fraud under section 27.01 of the business and commerce
code, and knowing and intentional misrepresentation. On June 4, after a hearing, Rosie obtained a
default judgment ordering appellants to specifically perform their promise to convey the property
and to pay Rosie's attorney's fees and costs. The default judgment was filed with the clerk on the
morning of June 11. Later that day, appellants filed a motion for new trial asserting that: (1) the
return of service was defective; (2) the citation was defective; and (3) counsel's failure to file a
timely answer was due to mistake or accident, appellants have a meritorious defense, and granting
a new trial would not result in delay or prejudice to Rosie. 

 In the motion for new trial and at the hearing on the motion for new trial, appellants'
counsel explained that his failure to file a timely answer was due to "an honest administrative error"
within his office. According to appellants' counsel, when he was retained by appellants in "late
April 2007" to initiate a cause of action to evict Rosie, he was unaware that Rosie had filed a
cause of action against appellants. Some time in April or May, one of the appellants delivered a
copy of Rosie's original petition to appellants' counsel's office. (2) Appellants' counsel contends that
this appellant obtained the petition from the courthouse. At the hearing on appellants' motion for
new trial, appellants' counsel testified:

He said that he had gone to the court because he wanted to--he couldn't get in
contact with my office or he couldn't get in contact with me personally, and he
wanted to see what had been done on the case. So he came down to the court and
picked up a petition and brought the petition back to my office. 



Appellants' counsel then explained:


At that time it was, I think, maybe two or three months after I had hired a paralegal
who was not really familiar with how these things work. And she did not understand
that when a petition is filed, even though we're hired to initiate the proceedings, we
were hired for the purpose of being the plaintiff. So that's where the confusion and
the mistake came in; we were hired for the purpose of evicting the plaintiff . . . .


So that caused some confusion in the mind of the paralegal because when she
received the petition, she did not really understand even though we were retained for
the purpose of evicting the petitioner, we still have to respond to that petition.


So that information was not put into our automated docketing system, which is
Amicus Attorney 7, which in turn would prompt me to meet the deadline for
responding to it.



In appellants' motion for new trial, appellants' counsel stated that he discovered Rosie's
original petition "during a monthly inspection of the physical files" and "contacted the court." On
July 3, the trial court denied appellants' motion for new trial. Appellants perfected this appeal.

 On appeal, appellants argue that the trial court erred in denying their motion for
new trial because: (1) the return of service was defective; (2) appellants met the Craddock factors
for setting aside a default judgment; and (3) Rosie is not entitled to recover from appellants as a
matter of law.




STANDARD OF REVIEW

 Trial courts have broad discretion in ruling on motions for new trial. Limestone
Constr., Inc. v. Summit Commercial Indus. Props., Inc., 143 S.W.3d 538, 542 (Tex. App.--Austin
2004, no pet.). We review a trial court's denial of a motion for new trial for abuse of discretion. Id.
at 542. The test for abuse of discretion is whether the trial court acted arbitrarily or without reference
to guiding legal principles. Cire v. Cummings, 134 S.W.3d 835, 839 (Tex. 2004). Although we are
generally deferential to the trial court's determination of facts, see, e.g., Flores v. Fourth Court of
Appeals, 777 S.W.2d 38, 41-42 (Tex. 1989), we do not defer to a trial court's application of the law,
McDaniel v. Yarbrough, 898 S.W.2d 251, 253 (Tex. 1995). A failure by a trial court to analyze or
apply the law correctly is an abuse of discretion. Id.

 A trial court abuses its discretion if it refuses to set aside a default judgment and grant
a new trial where: (1) the failure of the defendant to answer before judgment was not intentional or
the result of conscious indifference, but due to a mistake or an accident; (2) the motion for a
new trial sets up a meritorious defense; and (3) granting a new trial will occasion no undue delay or
otherwise injure the party taking the default judgment. Craddock, 133 S.W.2d at 126.


DISCUSSION

Return of Service

 Appellants first contend that the default judgment cannot stand because the return of
service was defective for failing to state the name of the person served and the place of service. The
return of service consists of a form with blanks filled in by the serving officer. (3) We set forth the
return of service in its entirety (italicized portions are handwritten in the return):


Officer's Return

Came to hand the 26 day of Apr., 2007, at 4:40 o'clock P.M., and executed the 30
day of Apr., 2007, at 9:15 o'clock A.M., by delivering to the within named
______________ in Bastrop County, Texas, in person, a true copy of this
INSTRUMENT and tendering said witness the sum of $ ______.


FEES: $ ______ R. Hernandez--Sheriff

 Officer or Authorized Person

 Bastrop County, Texas

 By: Jack Sparkman


The attached citations include appellants' names. Appellants do not contend that the citations
are defective.

 Service of citation must be in strict compliance with the rules of civil procedure to
establish jurisdiction over a defendant and support a default judgment. Wilson v. Dunn, 800 S.W.2d
833, 836 (Tex. 1990). If strict compliance is not shown, the service of process is invalid and of
no effect. Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885 (Tex. 1985). We
make no presumptions of valid issuance, service, or return of citation when examining a default
judgment. Id. However, "strict compliance with the rules does not require 'obeisance to the
minutest detail.'" Williams v. Williams, 150 S.W.3d 436, 443-44 (Tex. App.--Austin 2004,
pet. denied) (quoting Ortiz v. Avante Villa at Corpus Christi, Inc., 926 S.W.2d 608, 613
(Tex. App.--Corpus Christi 1996, writ denied)). "As long as the record as a whole, including
the petition, citation, and return, shows that the citation was served on the defendant in the suit,
service of process will not be invalidated." Id. at 444. 

 Texas Rule of Civil Procedure 107, which sets out the requirements for the return
of service, reads in pertinent part: "The return of the officer or authorized person executing
the citation shall be endorsed on or attached to the same; it shall state when the citation was
served and the manner of service and be signed by the officer officially or by the authorized person." 
Tex. R. Civ. P. 107. Rule 107 does not expressly require the return of service to include the name
of the person served. However, appellants contend that Rule 107's requirement that the return state
the "manner of service" includes showing the method by which the citation was served (e.g., hand
delivery or mail) and that the citation was served on a person capable of accepting service. For this
contention, appellants cite Faggett v. Hargrove, 921 S.W.2d 274, 277 (Tex. App.--Houston
[1st Dist.] 1999, no pet.), overruled, in part, on other grounds by Barker CATV Constr., Inc.
v. Ampro, Inc., 989 S.W.2d 789, 793 n.2 (Tex. App.--Houston [1st Dist.] 1999, no pet.) (en banc). 
In Faggett, the court held that the return for a citation for which the court had ordered substitute
service did not state the "manner of service" when it did not show that the person on whom citation
was served was capable of accepting service under Texas Rule of Civil Procedure 106. 921 S.W.2d
at 278 (holding record failed to show "manner of service" when "nothing in the record indicated that
'Fong, Tran' was a person over sixteen years of age" or that proper substitute service accomplished). 
Here, substitute service was not ordered. Appellants, the named defendants, are the people to whom
the Bastrop County sheriff's deputy delivered the citation and petition. Unlike the factual situation
in Faggett, there was no need to affirmatively show that all aspects of substituted service were met. 
Thus, the citation need not include this recitation. See Tavarez v. Smith, No. 03-02-00118-CV,
2002 Tex. App. LEXIS 8093, at *10-12 (Tex. App.--Austin Nov. 15, 2002, no pet.) (not designated
for publication).

 Further, Faggett is a restricted appeal, while this is an appeal from the denial of a
motion for new trial. The Texas Supreme Court has explained that because of "the differences
in these procedures . . . cases concerning one do not necessarily apply to the other." Fidelity & Guar.
Ins. Co. v. Drewery Constr. Co., 186 S.W.3d 571, 573 (Tex. 2006 ) (per curiam). A restricted appeal
is filed directly in the appellate court, and as in any other appeal, the appellate court does not take
testimony or receive evidence, and its review is limited to errors apparent on the face of the record. 
Id. In restricted appeals, "there are no presumptions in favor of valid issuance, service, and return
of citation" because the appellate court can neither confirm nor rebut presumptions with evidence. 
Id. (quoting Primate Constr., Inc. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam)). The
Court explained:


Thus, for example, if the citation says an amended petition was attached (which
named the defaulted party) and the return says the original petition was served
(which did not), an appellate court cannot tell from the record which is true. Primate
Constr., 884 S.W.2d at 152. Similarly, if the petition says the registered agent for
service is "Henry Bunting, Jr." but the citation and return reflect service on "Henry
Bunting," an appellate court cannot tell whether those persons are different or the
same. See Uvalde, 690 S.W.2d at 885.


Id. at 573. In contrast, "when a default judgment is attacked by a motion for new trial . . . the record
is not so limited. In those proceedings, the parties may introduce affidavits, depositions, testimony,
and exhibits to explain what happened." Id. at 573-74.

 Appellants provide no additional authority for their contention that the return of
service is required to include the defendant's name, or that if it is, the phrase "within named" when
the defendant is named in the citation does not suffice. Because the citation, return, and petition
together show that service was made on appellants, see Williams, 150 S.W.3d at 444, and appellants
have provided no evidence showing otherwise, we will not invalidate service of process on
this ground.

 Appellants also contend that the return's statement that citation was delivered "in
Bastrop County, Texas" failed to meet the requirement that the return state the place where service
was made. To support this contention, appellants cite Texas Rules of Civil Procedure 16 and 107,
as well as Jacksboro National Bank v. Signal Oil & Gas Company, 482 S.W.2d 339, 341-42
(Tex. App.--Tyler 1972, no writ). Rule 16 provides that an officer must include "on all process
and precepts coming to his hand . . . the time and place the process was served." Tex. R. Civ. P. 16.
Appellants provide no authority for their contention that "Bastrop County is not a sufficient
designation of place under Rule 16." Rule 107 includes no requirement that a return of service
include the place where service was made. And in Jacksboro, the return of service at issue included
no designation of place. 482 S.W.2d at 342 ("It would seem that to have affirmatively shown a valid
service, the sheriff's return should recite at least that the writ was served within the State of Texas.
The return in question states neither the city, town, state, nor country in which it was served."). We
will not invalidate service of process on this ground.

 In addition to their argument that the return of service was defective, it appears
appellants also contend that they were not served. (4) If a defendant did not receive suit papers,
generally a default judgment must be set aside. Fidelity, 186 S.W.3d at 574 (citing Peralta
v. Heights Med. Ctr., Inc., 485 U.S. 80, 84 (1988)). However, an exception to this rule exists
when the return of service includes the proper recitations and nonreceipt is uncorroborated. Id.;
Primate Constr., 884 S.W.2d at 152. The return of service is not a trivial, formulaic document and
is considered prima facie evidence of the facts it recites. Id. "The recitations in the return of service
carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party."
Id. Thus, we turn to appellants' proof. Appellants presented an affidavit from each defendant
stating, "I was not served a copy of the petition with a citation in this case." In addition, at the
hearing on the motion for new trial, appellants' counsel argued as follows:


COUNSEL: I think the most important comment that cannot be reiterated
enough is that they actually did not receive service; they
actually were not served. They were not handed anything by
a sheriff. That--and that's--and their verification in their
affidavits--they were not served. One of them came down to
this court and picked up that document--I mean, picked up
the original petition. And then they came to my office with
that original petition and said, hey, did you do this? Where
did this come from? Or that's what's been represented to me. 
And that's how--that's what was explained to the paralegal. 
They didn't--they were not handed anything; they weren't
served.


THE COURT: It would be, I believe, highly unusual for a deputy sheriff to
just invent or fabricate, if you will, a return of service.


COUNSEL: They may have given it to someone--I mean, there is no--the
trailer for the petitioner is on the same property as the trailer
for the respondent. There are no--to my understanding, there
are no numbers on the trailers. And the petitioner's trailer is
actually closest to the street, and the respondent's trailer is
actually furthest away from the street.


THE COURT: So your allegation is he may have served someone but it
wasn't your client?


COUNSEL: Exactly. On that same piece of property and the same
address. So I'm not saying he didn't serve anyone; all I'm
saying is he didn't serve my clients. And it's very--I mean,
that would be a forgivable mistake if you have two trailers on
the same piece of property and at the gate you see the number
for that piece of property and the first house you encounter is
right there, that would be very forgivable for the sheriff to
stop right here and assume that the first house--that this is the
house that corresponds to that address. And that's a very
reasonable mistake for him to make. But the ultimate result
of it was--whatever mistake was made, my clients weren't
served. 


Because appellants' proof is uncorroborated, it is insufficient to rebut the recitation in the return
that the sheriff's deputy delivered it to the "within named." Thus, the trial court did not abuse
its discretion in denying appellants' motion for new trial on this basis. We overrule appellants'
first issue.


Craddock Factors

 Because we hold that the trial court did not abuse its discretion in denying appellants'
motion for new trial on the basis of defective service of citation, we turn to Craddock. A trial court
abuses its discretion if it refuses to set aside a default judgment and grant a new trial where: (1) the
failure of the defendant to answer before judgment was not intentional or the result of conscious
indifference, but due to a mistake or an accident; (2) the motion for new trial sets up a meritorious
defense; and (3) granting a new trial will occasion no undue delay or otherwise injure the party
taking the default judgment. Craddock, 133 S.W.2d at 126. If the plaintiff does not controvert the
defendant's affidavits in support of a new trial motion, the trial court must accept as true the
affidavits' factual assertions regarding the Craddock elements. Director, State Employees Workers'
Comp. Div. v. Evans, 889 S.W.2d 266, 268 (Tex. 1994).


 (A) Mistake or Accident

 Appellants assert that their evidence established that their failure to file an answer
was due to mistake, not conscious indifference. To support their motion for new trial, appellants
presented their own affidavits, as well as the affidavits of appellants' counsel and appellants'
counsel's paralegal, which do not contain any factual assertions regarding appellants' failure
to answer, but instead state: "I have read the First Amended Motion for a New Trial and statements
contained therein pertaining thereto are within my personal knowledge and are true and correct."
Santos's affidavit further asserts that he did not promise to give Rosie or Sam any property.

 In appellants' first amended motion for new trial, they assert that some time in
May, (5) one of them--they do not specify which, and appellants' counsel testified that he does not
remember--obtained a copy of Rosie's original petition from the courthouse and brought it to
appellants' counsel's office. Appellants' counsel testified that this appellant obtained the petition
from the courthouse because "he wanted to--he couldn't get in contact with my office or he couldn't
get in contact with me personally, and he wanted to see what had been done on the case." Appellants
contend that although the petition had been delivered to appellants' counsel's office, appellants'
counsel was unaware of it because his paralegal failed to enter it into the internal docketing system. 
Appellants assert that during a monthly inspection of his files, appellants' counsel discovered the
petition and "contacted the court." Appellants have presented no evidence of the manner in which
counsel contacted the court or when this contact occurred. Presumably, it was before June 11, when
appellants filed their motion for new trial. At the hearing on the motion for new trial, Rosie's
counsel argued that a defendant is bound by his attorney's actions and that an internal docketing
mistake is not sufficient to set aside a default judgment. He further argued:


And in the affidavits of defendants' counsel--and they're a little unclear, as I pointed
out in my response, but first of all he said that he was given paperwork in April. 
That's the first motion for new trial. Now the second motion for new trial he
acknowledges he got the paperwork in May. Now, I'm not sure which one is the
truth, but in any event he had sufficient information in his hands to determine that
there was something that needed to be done. He had all the data he needed to file an
answer, and he had two weeks to do it and he did not respond in that fashion.


I think that that in and of itself can be construed as conscious indifference. And
certainly he intentionally did not file an answer; he intentionally did not look more
closely at the paperwork from which he could have concluded that an answer was
due. There was more than sufficient information for Counsel to conclude that there
was something that he needed to do to file an answer.



 Failing to file an answer intentionally or due to conscious indifference means "the
defendant knew it was sued but did not care." Levine v. Shackelford, Melton & McKinley, L.L.P.,
248 S.W.3d 166, 168 (Tex. 2008) (per curiam) (quoting Fidelity, 186 S.W.3d at 576). When
determining whether the defendant's failure to file an answer was not due to intentional disregard
or conscious indifference, a court looks to the knowledge and acts of the defendant. Evans,
889 S.W.2d at 269. Generally, when the defendant relies on an attorney to file an answer, the
defendant must establish that the failure to answer was not intentional or the result of the conscious
indifference of either himself or his attorney. See, e.g., Levine, 248 S.W.3d at 169; Estate of Pollack
v. McMurrey, 858 S.W.2d 388, 391 (Tex. 1993). The defendant's burden as to the first prong of the
Craddock test is satisfied when the defendant's factual assertions, if true, negate intentional or
consciously indifferent conduct and are not controverted by the plaintiff. Evans, 889 S.W.2d at 268. 
In determining if the defendant's factual assertions have been controverted, the court looks to all the
evidence in the record. Id. at 269. 

 The trial court's ruling indicates that it found that although appellants may have
negated conscious indifference on their part by providing evidence that they delivered a copy of the
petition to their attorney, they did not negate conscious indifference on the part of their attorney:


I believe when a petition, an original petition, is delivered to a lawyer's office, that
should be enough diligence, if you will, on the part of the client to get an answer
filed. And I'm not satisfied with your claim that your paralegal made a mistake and
didn't put it on the calendar or docket or give it to you.



We agree that by delivering a copy of the petition to their attorney, appellants took sufficient action
to negate conscious indifference on their part. However, we hold that appellants' counsel's actions,
while perhaps negligent, do not reach the level of conscious indifference. 

 Rosie argues that conscious indifference means "a failure to take some action
which would seem indicated to a person of reasonable sensibilities under the same circumstances."
However, the Texas Supreme Court recently clarified that the first prong of the Craddock test is not
a negligence standard. Levine, 248 S.W.3d at 168. In Levine, the attorney knew of the deadline
to file an answer and agreed to file one by that date, but failed to do so. Id. at 169. He again failed
to meet an extended deadline. Id. He eventually emailed a draft answer to the parties, but never
attempted to confirm that it was filed "despite repeated discussions, emails, and contact with the
opposing party warning him that if he did not file an answer, [the opposing party] would take a
default judgment." Id. The Court held that "[t]his pattern of ignoring deadlines and warnings from
the opposing party amounts to conscious indifference." Id.

 Our survey reveals that in cases holding that the acts of attorneys reached the level
of conscious indifference, the nonmovant presented evidence that the movant's attorney was
aware of the impending default judgment or that the movant's attorney had repeatedly ignored
deadlines or communications. See, e.g., Padilla v. Hollerman Dev., L.P., No. 04-08-00739-CV,
2009 Tex. App. LEXIS 2917, at *10 (Tex. App.--San Antonio Apr. 29, 2009, no pet.) (mem. op.)
(holding it was not abuse of discretion for trial court to deny motion for new trial when attorney
looked at petition and instructed client no answer was needed because service was improper, but
testified he did no research regarding whether answer was due and if he had, he would have
filed answer); Kern v. Spencer, No. 2-06-199-CV, 2008 Tex. App. LEXIS 5582, at *15-17
(Tex. App.--Fort Worth July 24, 2008, no pet.) (mem. op.) (holding it was not abuse of discretion
for trial court to deny motion for new trial when evidence included: six certified mailings notifying
attorney of submission date; uncontroverted statements regarding attorney's recurring pattern of
failure to prosecute case, show up for depositions, and respond to discovery; and testimony that
attorney often used excuse of not having been notified); 21st Century Home Mortgage v. City of
El Paso, 281 S.W.3d 83, 86-87 (Tex. App.--El Paso 2008, no pet.) (holding it was not abuse of
discretion for trial court to deny motion for new trial when attorney testified that he thought client
was not party to lawsuit and was confused as to why client was served, but nonmovant presented
citation stating that client had been sued in second amended petition and that default would be taken
if client did not answer). (6)

 Here, appellants have presented evidence that they delivered the original petition to
their attorney's office, but that because of his paralegal's administrative error, he was not aware of
it and thus did not know that an answer was due. Appellants provided the affidavits of their attorney
and his paralegal attesting to the explanation of the administrative error provided in the motion
for new trial. Although it should have been no surprise to appellants that Rosie filed a lawsuit in
district court since she had filed a request to take Sam's deposition prior to suit five months earlier,
by delivering a copy of the petition to their attorney, appellants took sufficient action to negate
conscious indifference. Appellants retained their current attorney in April 2007, five months
after the request to take Sam's deposition prior to suit, and Rosie has presented no evidence
that appellants' counsel was aware of this request. Rosie has presented no evidence to controvert
appellants' contention that their attorney was unaware that a petition was filed and an answer was
due. Nor has she presented evidence that she warned appellants or their attorney that she would take
a default or that appellants or their attorney had engaged in a pattern of disregarding deadlines. She
likewise has not presented evidence controverting appellants' proof of the paralegal's error in failing
to enter the petition into the internal docketing system. See Fidelity, 186 S.W.3d at 576 ("The
affidavits here show neither intent nor indifference. Instead, they detail Fidelity's efforts to establish
a system that would avoid precisely what happened. As Drewery did not controvert this proof, the
trial court was not at liberty to disregard it.").

 Because appellants have presented evidence that their failure to answer was due to
their attorney's mistake and Rosie has presented no controverting evidence, we hold that appellants
met the first prong of the Craddock test.


 (B) Meritorious Defense

 The second prong of the Craddock test requires appellants to "set up" a meritorious
defense in their motion for new trial. Dolgencorp of Tex., Inc. v. Lerma, 288 S.W.3d 922, 927
(Tex. 2009) (per curiam). "Setting up a meritorious defense does not require proof 'in the accepted
sense.'" Id. at 927-28 (quoting Ivy v. Carrell, 407 S.W.2d 212, 214 (Tex. 1966)). Rather, a motion
for new trial sets up a meritorious defense if it alleges facts which in law would constitute a defense
to the plaintiff's cause of action and is supported by affidavits or other evidence providing
prima facie proof that the defendant has such a defense. Id. at 928. Once such requirements are met,
controverting evidence offered by the nonmovant should not be considered. Id.

 Appellants' first amended motion for new trial asserted "[d]efendants deny that
Plaintiff was given permission to move onto property by Mr. David Cervantes, the rightful owner
of the property and that Plaintiff was promised ownership of the property in exchange for Plaintiff's
moving onto the property." Appellants submitted affidavits from each appellant stating "I have read
the First Amended Motion for a New Trial and statements contained therein pertaining thereto are
within my personal knowledge and are true and correct." Santos's affidavit further stated:


My son Santos Cervantes, Jr. [Sam] asked to move onto the property because of his
financial problems he was having due to his terminal illness and the criminal
problems his sons and grandsons were having in Houston, Texas. I made no promise
to give my son Santos Cervantes any property. He was allowed them [sic] to move
onto the property only because of the hardship he then suffered. 


At the hearing on the motion for new trial, in addition to asserting that Santos and Esther never
promised to give the property to Rosie or Sam, appellants' counsel also asserted:

Primarily the meritorious defense is that the defendants, Mr. Santos Cervantes and
Ms. Esther Cervantes, number one, they don't own the property that the plaintiff is
saying they gave to the plaintiff. You cannot convey more than you own; that's a
fundamental rule of property. You can't convey that which you do not own. The
property belongs to David . . . the petition itself says, Santos and Esther made the
promises. They don't implicate David in making any promises. 


 The facts alleged in appellants' motion, if true, would constitute a defense to Rosie's
cause of action. Further, the affidavits appellants submitted and appellants' counsel's testimony
at the hearing on the motion for new trial provided prima facie support for the defense. Appellants
have satisfied the second prong of the Craddock test.


 (C) No Undue Delay

 The third prong of the Craddock test is that the motion for new trial be filed at a
time when the granting thereof will occasion no undue delay or otherwise injure the plaintiff. Evans,
889 S.W.2d at 270. "Once a defendant has alleged that granting a new trial will not injure
the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff." Id. The
purpose of the third prong of the Craddock test is to protect a plaintiff against the sort of undue delay
or injury that would result in a disadvantage when presenting the merits of the case at a new trial,
"such as a loss of witnesses or other valuable evidence." Id.

 In their motion for new trial, appellants asserted that granting a new trial would not
result in delay or prejudice and offered to go to trial immediately and to reimburse Rosie for the
expenses incurred in obtaining the default judgment. (7) Rosie's response to the motion for new trial
does not assert that granting a new trial would cause her any injury, nor did she present any evidence
of injury at the hearing on the motion for new trial. Thus, Rosie has failed to show an injury that
negates appellants' allegation of no undue delay or injury. Appellants have satisfied the third prong
of the Craddock test.

 Because appellants have satisfied all three prongs of the Craddock test, we need not
reach appellants' remaining issue.


CONCLUSION

 Because appellants satisfied all three prongs of the Craddock test, we hold that the
trial court abused its discretion in refusing to set aside the default judgment against appellants. 
Accordingly, we reverse the trial court's judgment and remand the case for further proceedings
consistent with this opinion.


 __________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Reversed and Remanded

Filed: November 5, 2009
1. Because the parties share a common surname, we will refer to them by their first names to
avoid confusion.


2. Appellants' counsel testified that he did not remember which of the individual appellants
delivered the petition: "one of the defendants--I don't recall which one--came into the office with
a petition in his hand." 
3. The returns of service for Santos, Esther, David, and Martha are identical with the
exception of the times. 
4. On appeal appellants' arguments with respect to service of process are focused on the
return of service. However, because appellants' brief refers to appellants' affidavits stating that they
were not served, we address this issue.
5. Appellants initially asserted in their motion for new trial that this delivery occurred
"on around April 26, 2007." Appellants' first amended motion for new trial states that it occurred
"on around May 26, 2007." At the hearing on the motion for new trial, appellants' counsel testified
that it occurred "sometime around May, late May." Appellants' answer was due May 21, thus, it is
unclear on this record whether the original petition was in appellants' counsel's possession before
the answer was due.
6. The cases Rosie cites in which the movant's error or inaction amounted to conscious
indifference predate the Texas Supreme Court's clarification of conscious indifference in Levine
and appear to apply a negligence standard. See, e.g., Advanced Aesthetics, Inc. v. Creative Beauty
Innovations, Inc., No. 2-04-078-CV, 2005 Tex. App. LEXIS 1142, at *15 (Tex. App.--Fort Worth
Feb. 10, 2005, pet. denied) (mem. op.) (holding that "a person of reasonable sensibilities under the
same circumstances would have taken action to file an answer . . . prior to the date the trial court
signed the default judgment"); Prince v. Prince, 912 S.W.2d 367, 370 (Tex. App.--Houston
[14th Dist.] 1995, no writ) (holding that court "interpret[s] conscious indifference to mean a failure
to take some action which would seem indicated to a person of reasonable sensibilities under the
same circumstances").

7. A party's willingness to go to trial immediately and pay for the expenses of the
default judgment are important factors for the court to look at in determining whether it should
grant a new trial, but are not dispositive. Director, State Employees Workers' Comp. Div. v. Evans,
889 S.W.2d 266, 270 n.3 (Tex. 1994).