# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00429-CV

**L.B., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
### NO. 08-0027, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Department of Family and Protective Services (TDFPS) petitioned for the termination of L.B.'s parental rights regarding her three children, Ja.B., Jo.B., and Ju.H.[1]  After a bench trial, the trial court entered a final order terminating L.B.'s rights, finding that statutory grounds for termination existed and that termination of L.B.'s rights was in the best interest of the children.  *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2009).  L.B. filed a statement of points on appeal with the trial court as required by statute.  *See* Tex. Fam. Code Ann. § 263.405(b)(2) (West 2008).  After a hearing on L.B.'s statement of points, the trial court found that L.B.'s appeal was frivolous and therefore she was not entitled to a free reporter's record of the trial.  L.B. appeals the frivolousness finding.  We affirm the judgment of the trial court.

---

[1]  In appeals from cases involving the termination of parental rights, the rules of appellate procedure require the use of an alias to refer to a minor, "and if necessary to protect the minor's identity, to the minor's parent or other family member."  Tex. R. App. P. 9.8.

**BACKGROUND**

L.B. is the mother of three children, Ja.B., Jo.B, and Ju.H. Ja.B. and Jo.B. were born

in Indianapolis, Indiana, where L.B.'s parents live, and Ju.H. was born in San Marcos, Texas.[2] At

the conclusion of trial, Ja.B. was four years old, Jo.B. was two years old, and Ju.H. was one year old.

According to L.B.'s testimony, Ja.B. was conceived after L.B.'s uncle sexually assaulted her, while

Jo.B.'s father is a man with whom L.B. had a one-night stand.[3] Ju.H.'s father is Jo.H., with whom

L.B. has had an ongoing relationship for the past several years.[4]

Prior to moving to Texas, L.B. lived with her parents in Indiana, where she began

dating Jo.H. in late 2005. According to Araceli Ruppert, one of L.B.'s caseworkers, the couple's

lifestyle in Indiana included "smoking pot and drinking." Their relationship also involved numerous

incidents of domestic violence. L.B. testified at trial that she could not remember the first time Jo.H.

had assaulted her, and stated that the violence included hitting her and biting her on the face. She

also testified that Jo.H. stabbed her arms with a knife in the presence of Ja.B. and Jo.B. Jo.H. spent

several months in prison in Indiana for domestic violence involving L.B.

L.B. moved from Indiana to San Marcos in November 2007, shortly before the birth

of Ju.H.[5] L.B. had tested positive for drug use during her pregnancy, and testified at trial that she

---

[2] The facts recited herein are taken from the testimony and exhibits admitted at trial.

[3] Ja.B.'s father (L.B.'s uncle) was incarcerated in Indiana at the time of trial, while Jo.B.'s father was facing charges involving the sexual abuse of a child in Kentucky. The parental rights of both men were terminated at trial.

[4] Jo.H. voluntarily relinquished his parental rights regarding Ju.H. prior to trial.

[5] Jo.H. has family members in the San Marcos area, and he joined L.B. in San Marcos after his release from prison in Indiana.

had used unprescribed Vicodin for back pain while pregnant with Ju.H.[6]  Ju.H. was born several weeks premature and suffers from a benign cystic tumor in his brain that has impeded the development of his speech.  He was removed from L.B.'s custody directly from the maternity ward.

On February 29, 2008, a status hearing was held under Chapter 263 of the family code regarding L.B.'s three children, all of whom were in the state's custody by that time.[7]  *See* Tex. Fam. Code Ann. § 263.201(a) (West 2008).  The court's order specified that L.B. was to attend counseling for anger management, parenting, and domestic violence, and also mandated that L.B. acquire "two bedroom housing."

L.B.'s counseling services were initially provided by caseworker Lindi Butler and therapist Gayle Mihalek.  Butler testified that the service plan was "nontraditional," involving more one-on-one counseling than most plans.  Mihalek initially met weekly with L.B., but the sessions ceased after Jo.H. returned from prison in Indiana.  Mihalek, who was uncomfortable holding sessions in L.B.'s home after Jo.H.'s return, scheduled one meeting with L.B. at a public library, which L.B. canceled.  After that, Mihalek was unable to contact L.B. to schedule any additional meetings.  Butler indicated that Mihalek also felt that the value of the sessions was limited due to L.B.'s refusal to submit to a psychiatric exam and spend time in a group home.  A new therapist, Roxanne McMillan, was assigned to L.B. in August 2008, but was also unable to establish a regular

---

[6]  Cheryl Boyd, a volunteer with Texas Court Appointed Special Advocates (CASA), indicated that the removal affidavit included an admission by L.B. that she had a prior history of illegal drug use.

[7]  The record does not indicate when Ja.B. and Jo.B. were taken into the state's custody.

meeting schedule with L.B. Butler indicated that L.B. decided to discontinue counseling, and L.B. herself admitted at trial that she had not completed the counseling program ordered by the court.

On September 5, 2008, Scott Johnson, a corporal with the San Marcos police department, testified that he responded to a domestic-abuse call involving L.B. Johnson testified that L.B. told him that the man she was living with, who was in the midst of a two-day binge on alcohol and drugs,[8] had strangled her on an apartment balcony after she had refused his sexual advances. L.B. had beckoned onlookers to call for help, which they did, after which the man bit her on the face. Johnson said L.B. was crying and shaking, had missing clumps of hair on her head, and had a bite mark on her face that looked like a scar. Following the incident, Jo.H. was arrested on family-violence charges, and remained in prison through the time of trial.[9]

In January 2009, L.B. returned to Indiana, and as a result did not engage in therapy or see Ja.B., Jo.B., or Ju.H. during the months of January, February, March, or April 2009.[10] Ruppert testified that the children were in foster homes during that period and were "all doing fantastic." She also testified that, when she first encountered Ja.B. and Jo.B., the children were unusually "uncontrollable," as "they would spit, they would bite, they would kick, [and] use profanity." In

---

[8] Ruppert testified that L.B. indicated that she was also "drunk and high" at the time of the incident.

[9] L.B.'s brief indicates that Jo.H. pleaded guilty to the charges, though L.B. testified that she asked the district attorney to drop the charges.

[10] L.B., who was pregnant with a fourth child at the time, testified that she returned to Indiana because "I already knew if I had my daughter in the State of Texas you-all would take her too." Against the advice of doctors, L.B. had checked herself out of the high-risk pregnancy ward of St. David's Medical Center to make the trip. In January 2009, L.B.'s fourth child was born prematurely in Indiana, more than three months before the due date, and died soon thereafter.

particular, Jo.B. would often bite adults who approached him. However, according to Ruppert, these tendencies diminished after Ja.B. and Jo.B were placed in a foster home. Ruppert also testified that Ju.H. had been placed in a home that provided him with the individualized attention required due to his special needs.

At the time of trial, L.B. had returned to Texas and was living in women's shelters and community centers, though she testified that she was about to obtain housing in a one-bedroom apartment. She visited Jo.H. in prison on the morning of trial, and explained at trial that she had gotten Jo.H.'s name tattooed on her neck within the previous three months. When asked if she thought Jo.H. was an unfit father, L.B. testified, "No, I do not, sir." Ruppert testified that, after she was appointed L.B.'s caseworker in March 2009, L.B. told her "personally that she was in love with [Jo.H.], they were going to stay together, [and] this was someone she wanted to raise her family with."

After a bench trial, the trial court found that L.B.'s actions violated section 161.001(1) of the family code, and further found that termination of L.B.'s rights would be in the best interest of Ja.B., Jo.B., and Ju.H. *See* Tex. Fam. Code. Ann. § 161.001. Accordingly, the trial court entered a final order terminating L.B.'s parental rights.

As required by the family code, L.B. filed a statement of points on appeal with the trial court. *See* Tex. Fam. Code Ann. § 263.405(b)(2). L.B.'s filing also included a motion for a court-appointed attorney and a motion for a free appellate record based on her indigent status. After a hearing on L.B.'s statement of points, the trial court signed an order finding that L.B. was indigent and entitled to a court-appointed attorney on appeal, but also found that her appeal was frivolous and

therefore she was not entitled to a free reporter's record of the trial. L.B. appealed the frivolousness determination to this Court. As we were unable to determine whether L.B.'s appeal was frivolous based on the record of the hearing, we ordered the trial record prepared. Having received that record, we proceed to review the trial court's frivolousness finding.

**STANDARD OF REVIEW**

We review a trial court's frivolousness finding under an abuse-of-discretion standard. *In re M.N.V.*, 216 S.W.3d 833, 834 (Tex. App.—San Antonio 2006, no pet.). Under this standard, we decide whether the trial court acted without reference to guiding rules and principles or if the act complained of is arbitrary and unreasonable. *Lumpkin v. Texas Dep't of Family & Protective Svcs.*, 260 S.W.3d 524, 527 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

As the natural right that exists between parents and their children is of constitutional dimensions, *Stanley v. Illinois*, 405 U.S. 645, 652 (1972), due process requires that the petitioner justify termination of that right by clear-and-convincing evidence. Tex. Fam. Code Ann. § 161.206(a) (West 2008); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008); *In re S.B.*, 207 S.W.3d 877, 884 (Tex. App.—Fort Worth 2006, no pet.).

Accordingly, we conduct our frivolousness review in light of the heightened clear-and-convincing burden of proof, and inquire whether the trial court abused its discretion by determining that the evidence is such that a fact-finder could have reasonably formed a firm belief or conviction that its findings were true. *Lumpkin*, 260 S.W.3d at 528.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001). A trial court abuses its discretion in admitting or excluding evidence if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We must uphold a trial court's evidentiary ruling if there is any legitimate basis in the record to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

## DISCUSSION

Our review is limited to analysis of the trial court's finding that L.B.'s statement of points presented no substantial question for appellate review, rendering her appeal frivolous. *See* Tex. Fam Code Ann. § 263.405(g); *Lumpkin*, 260 S.W.3d at 527. An appeal is frivolous when it lacks an arguable basis either in law or in fact. *Lumpkin*, 260 S.W.3d at 527. L.B. argues that she presented substantial questions for appellate review concerning (1) the statutory basis for the termination of her parental rights and (2) the admissibility of Wendy Cunningham's testimony.

7

*Statutory Grounds for Termination*

In L.B.'s first point on appeal, she argues that the evidence was legally and factually insufficient to support the trial court's finding of statutory grounds for the termination of her parental rights. *See* Tex. Fam. Code Ann. § 161.001(1) (listing grounds for termination of rights). In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish by clear-and-convincing evidence (1) that one statutory ground for termination is satisfied and (2) that termination is in the best interest of the child.[11] *Id.* § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The trial court relied on three grounds for termination listed in section 161.001(1), which reads in relevant part:

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

(1) that the parent has:

. . .

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . .

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the

---

[11] The trial court also found by clear-and-convincing evidence that termination of L.B.'s parental rights was in the best interest of the children, a finding L.B. does not challenge.

8

child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

. . . .

Tex. Fam. Code Ann. § 161.001. The trial court found that termination of L.B.'s parental rights regarding Ja.B. and Jo.B. was supported by the grounds described in subsections (D), (E), and (O), and that termination of L.B.'s rights regarding Ju.H. was supported by subsections (E) and (O).

We begin with subsection (E), the first ground that impacts all three of the children. In determining whether the conduct of the parent has endangered the child's well-being under subsection (E), we look exclusively to the parent's conduct, including actions, omissions, and failures to act. *Williams v. Williams*, 150 S.W.3d 436, 450 (Tex. App.—Austin 2004, pet. denied). Termination based on this subsection must be based on more than a single act or omission; rather, a voluntary, deliberate, and conscious "course of conduct" that endangered the child's physical and emotional well-being is required. *Id.* The endangering acts need not have been directed at the child or have caused an actual injury or threat of injury to the child to constitute conduct that endangers the child's physical or emotional well-being. *Id.* Accordingly, acts directed at a parent's other children may be considered when determining endangerment to the child who is the subject of the termination proceedings. *See In re Baby Boy R.*, 191 S.W.3d 916, 925 (Tex. App.—Dallas 2006, pet. denied). Further, courts may consider conduct occurring before a child was born. *See In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.) ("[C]ourts look to what the parent did both before and after the child's birth to determine whether termination is necessary.").

9

As a general matter, conduct that subjects a child to a life of uncertainty and instability may endanger the child's physical and emotional well-being under subsection (E). *In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009). Texas courts have found relevant conduct to include exposure of children to domestic violence. *See In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (considering fact that mother "exposed her children to domestic violence," including incident where mother was "smacked" in front of child, as evidence of endangerment under subsection (E)). In addition, drug use, particularly drug use during pregnancy, may also support a finding of endangerment. *See Dupree v. Texas Dep't of Protective and Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ) (concluding that mother's use of drugs during pregnancy endangered child); *see also In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("Drug use and its effect on a parent's life and [] ability to parent may establish an endangering course of conduct.").

In this case, TDFPS presented evidence that Ja.B. and Jo.B. were exposed to domestic violence while in L.B.'s care. L.B. herself testified that Jo.H. stabbed her arms with a knife while Ja.B. and Jo.B. were present. TDFPS also presented evidence that the incident was part of an ongoing pattern of violence involving L.B. and Jo.H., with the first reported incident of violence occurring prior to L.B.'s relocation to Texas in 2007. Trial testimony indicates that the violence continued after L.B.'s children were removed from her care, including an incident in September 2008 during which Jo.H. attempted to strangle L.B. on an apartment balcony and bit her on the face,

10

resulting in Jo.H.'s arrest on family violence charges.[12] TDFPS also presented evidence that L.B. continued to maintain contact with Jo.H. following his arrest, visiting him in jail and getting his name tattooed on her neck. According to caseworker Ruppert, in 2009 L.B. declared that she still wanted to raise a family with Jo.H. TDFPS also presented evidence that Ja.B. and Jo.B. were unusually aggressive and violent after being taken into the State's custody, and that Jo.B. in particular had a penchant for biting.

TDFPS also presented evidence involving L.B.'s drug use. L.B. testified that she used Vicodin that had not been prescribed to her while she was pregnant with Ju.H. Other witnesses testified that L.B. had confessed to using drugs on other occasions, including marijuana use prior to her move to Texas in 2007 and drug use in September 2008.

This evidence of exposure to domestic violence and drug use would allow a reasonable fact-finder to form a firm belief or conviction that L.B. engaged in a course of conduct

---

[12] In her brief, L.B. argues that "being a victim of domestic violence[] is not, in [and] of itself, grounds for a parent to lo[se her] children," citing *Lewelling v. Lewelling*. 796 S.W.2d 164 (Tex. 1990). In *Lewelling*, which involved a custody dispute, the supreme court held that "evidence that a parent is a victim of spousal abuse, by itself, is no evidence that awarding custody to that parent would significantly impair the child." *Id.* at 167. However, numerous Texas courts of appeals have held that exposing children to domestic violence—a matter extending beyond the fact that a parent has been the victim of abuse—may be considered in determining endangerment in the context of a termination proceeding. *See, e.g.*, *In re J.J.S.*, 272 S.W.3d 74, 79 (Tex. App.—Waco 2008, pet. denied) (upholding endangerment after trial court found that mother "conducted herself in a manner, namely her abusive relationships, which exposed her children to a home where physical violence was present"); *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (considering fact that mother "exposed her children to domestic violence" as evidence of endangerment under subsection (E)); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Thus, the trial court could have considered the domestic violence . . . as evidence of endangerment to [the child]."); *Sylvia M. v. Dallas County Welfare Unit*, 771 S.W.2d 198, 204 (Tex. App.—Dallas 1989, no writ) (considering "volatile and chaotic" marriage, altercation during pregnancy, and mother's repeated reconciliation with abusive spouse in termination case).

11

that endangered all three of her children. *See In re Baby Boy R.*, 191 S.W.3d at 925 (holding that conduct directed towards other children is relevant to endangerment of subject child). Accordingly, the trial court did not abuse its discretion in determining that L.B.'s points of error regarding the statutory basis for termination are frivolous.[13]

*Admission of Testimony of Wendy Cunningham*

In her second point on appeal, L.B. argues that the trial court abused its discretion in admitting the testimony of Wendy Cunningham, asserting that TDFPS's disclosures regarding Cunningham were inadequate. Cunningham, a social worker who consulted with L.B. during her stay at St. David's Medical Center, was not designated as an expert witness. Accordingly, TDFPS was required to disclose only Cunningham's name, address, and telephone number, as well as a

---

[13] As only one ground is required to support a termination of parental rights, we need not address L.B.'s arguments challenging the trial court's findings regarding subsections (D) and (O) of section 161.001(1) of the family code. *See In re D.M.*, 58 S.W.3d 801, 813 (Tex. App.—Fort Worth 2001, no pet.) (declining to address other grounds after upholding termination on one ground under section 161.001(1)). However, we note that the same evidence that supports a finding of endangerment under subsection (E) also supports the trial court's finding under subsection (D) that L.B.'s actions subjected Ja.B. and Jo.B. to "conditions or surroundings which endanger the physical or emotional well-being of the child." *See* Tex. Fam. Code Ann. § 161.001(1)(D) (West Supp. 2009); *see also In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.) (explaining that "evidence pertaining to subsections (D) and (E) is interrelated"); *In re M.R.*, 243 S.W.3d at 819 (holding that evidence of exposure to domestic violence and failure to complete service plan was sufficient to satisfy both subsections (D) and (E)).

The trial court also found the termination of L.B.'s parental rights to all three children was supported by subsection (O), which involves failure to complete a court-ordered service plan. *See* Tex. Fam. Code. Ann. § 161.001(1)(O). Other Texas courts have held that, under subsection (O), the petitioner must prove by clear-and-convincing evidence that the subject child was removed from the parent's care due to abuse or neglect. *See In re A.A.A.*, 265 S.W.3d 507, 515 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The trial record in this case, however, does not clearly indicate the circumstances under which Ja.B., Jo.B., and Ju.H. were removed from L.B.'s care.

"brief statement of [her] connection with the case." Tex. R. Civ. P. 194.2(e).[14] In response to L.B.'s discovery requests, TDFPS provided Cunningham's name, address, telephone number, and a description of her as a "social worker." L.B. asserts that this description does not constitute a statement of Cunningham's "connection with the case," and therefore the trial court was required to exclude Cunningham's testimony. *See id.* R. 193.6(a) (mandating exclusion of testimony if proper witness disclosures are not made).

To obtain reversal of a judgment based upon an error by the trial court, the appellant must show that (1) the court erred and (2) the error probably caused rendition of an improper judgment in the case. Tex. R. App. P. 44.1(a); *In re D.I.B.*, 988 S.W.2d 753, 756 n.10 (Tex. 1999). A successful challenge to an evidentiary ruling usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995).

We begin by noting that L.B. does not indicate what harm resulted from the admission of Cunningham's testimony. Cunningham testified about her interaction with L.B. while L.B. was hospitalized. Though Cunningham testified regarding L.B.'s reports of incidents of domestic violence,[15] testimony regarding domestic violence was also presented by several other witnesses, including L.B. herself. *See Beam v. A.H. Chaney, Inc.*, 56 S.W.3d 920, 923 (Tex. App.—Fort Worth

---

[14] Additional disclosures, such as the subject matter of the witness's testimony and the basis on which impressions and opinions were formed, are required only for testifying expert witnesses. *See* Tex. R. Civ. P. 194.2(f).

[15] Specifically, Cunningham testified, "Per my notes, specific instances of violence which involved biting the face, pulling the hair, stabbing to the arms and head, as well as sexual assault with a knife." Other witnesses testified of incidents of domestic violence involving biting, pulling hair, and stabbing of L.B.'s arms.

2001, pet. denied) (explaining that admission of testimony is harmless when it is cumulative of other properly admitted evidence).

Further, the judgment did not "turn on" Cunningham's other testimony, which detailed L.B.'s decision to check out of the hospital during her fourth pregnancy and her future plans at that time. This testimony does not involve the primary conduct underlying the termination of L.B.'s parental rights, including the exposure of her children to domestic violence and use of drugs while pregnant. Accordingly, even if the trial court erred in admitting Cunningham's testimony,[16] the record does not support the conclusion that the action probably caused the rendition of an improper judgment.

Accordingly, we determine that the trial court did not abuse its discretion in determining that L.B.'s second point on appeal is frivolous.

---

[16] While Texas law is unclear regarding precisely what information is required in a "brief statement of each identified person's connection with the case," we note that the description of Cunningham as a "social worker" represents at least an attempt to comply with the rule. *See id.* R. 194.2(e); *Beam v. A.H. Chaney, Inc.*, 56 S.W.3d 920, 923 (Tex. App.—Fort Worth 2001, pet. denied) (holding that trial court erred in admitting witness testimony when no statement of connection of any kind was provided). We further note that the description provided, including Cunningham's name, address, telephone number, and title, provided L.B. with reasonable information with which to identify the witness, thus mitigating any potential surprise or prejudice. *Cf.* Tex. R. Civ. P. 1 (instructing that rules of civil procedure are to be construed liberally in order "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants"), 193.6(a)(2) (instructing that trial courts may admit testimony of improperly identified witness if "the failure to make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties").

14

## CONCLUSION

We affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   April 9, 2010

15