# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00827-CV

---

**W. L., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 146ST DISTRICT COURT OF BELL COUNTY
### NO. 294-613-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

W.L., who is the mother of the five children in this case, appeals from the trial court's decree of termination and order appointing managing conservator.[1] *See* Tex. Fam. Code § 161.001. Following a bench trial, the trial court found by clear and convincing evidence that statutory grounds for terminating her parental rights existed as to four of her children and that termination was in those children's best interest.[2] *See id.* § 161.001(b)(1)(E), (O), (2). Raising three issues, W.L. contends that her due process rights were violated and that the evidence was

---

[1] We refer to appellant, her mother, the fathers, and the five children by their initials only. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8. S.W. is appellant's mother; R.L.L., II is the father of J.L.-L.; V.P. is the father of V.P., Jr., M.L.-P., and K.L.; and G.M. is the father of P.L. The fathers and S.W. have not appealed from the decree of termination and order appointing managing conservator and are not parties on appeal.

[2] W.L.'s parental rights were not terminated as to J.L.-L., who was 16 years old at the time of trial. The court appointed the Department as the sole managing conservator of J.L.-L. and ordered J.L.-L. to be returned to his father, R.L.L., II, on a monitored return if R.L.L., II had a negative nail test or hair follicle.

legally and factually insufficient. For the following reasons, we affirm the trial court's decree of termination and order appointing managing conservator.

## Background

The Texas Department of Family and Protective Services filed a petition in August 2017, concerning W.L.'s children J.L.-L.; V.P., Jr.; M.L.-P.; and K.L., arising from W.L.'s "ongoing drug use." According to an affidavit that the Department filed in that case, W.L. "tested positive for cocaine three times during the course of the investigation with the last test having levels that increased significantly." That case concluded on April 24, 2018, when the trial court signed an order appointing W.L.'s mother, S.W., as the sole managing conservator of the children. At that time, J.L.-L. was 14 years old; V.P., Jr. was 9 years old; M.L.-P. was 2 years old; and K.L. was 1 year old. Under the terms of the order, it was within S.W.'s discretion to allow W.L. visitation with her children. After the trial court signed the April 2018 order, W.L. resided in a home with her children and S.W.[3]

This appeal arises from a subsequent case brought by the Department. The Department filed a petition on October 29, 2018, seeking modification of the April 2018 order and termination of parental rights following "a violent domestic incident" on October 27, 2018, between W.L., who was six months pregnant, and S.W. "where knives were involved." The incident occurred at their home while some of the children were home. As a result of this incident, W.L. was arrested, pleaded guilty, and was convicted for assaulting S.W. In its petition supported by an affidavit, the Department sought to remove S.W. as the children's managing conservator and to terminate the parental rights of W.L. and the children's fathers. The trial

---

[3] W.L. testified at trial that she moved out when the case ended but moved back in several months later.

court signed an order for protection of the children, appointing the Department the temporary managing conservator of the four children, and the four children were removed from the home where W.L., S.W., and the children had been residing.

W.L. gave birth to P.L. on December 28, 2018, and the Department filed an amended modification petition in this case on December 31, 2018, that included P.L. The Department alleged violence between S.W. and W.L. and illegal drug use by W.L. According to the affidavit supporting the Department's requested relief, W.L. tested positive for cocaine in November 2018 "while pregnant." The trial court signed a subsequent order for protection, appointing the Department the temporary managing conservator of the five children, and P.L. was placed with a relative.

In the status review order from the hearing on January 15, 2019, the trial court stated that W.L. and her attorney were present and that W.L. had reviewed and understood the Department's service plan and ordered her to follow the Department's service plan. The plan, which was admitted as an exhibit at trial, required her to attend and participate in individual counseling, complete a psychological evaluation and follow all recommendations, participate in supervised visits with her children, submit to random drug tests on a weekly basis, pay child support, and provide and maintain a safe, clean, and appropriate home. The plan also prohibited her from using any illegal or illicit drugs and from participating in criminal activities. Specifics were provided in the plan such as contact information and locations.

The bench trial occurred over two days in September 2019. The witnesses included the conservatorship caseworker assigned to this case, W.L., S.W., V.P., the caregiver for V.P., Jr., who had been his football coach, and the guardian ad litem. W.L.'s witnesses were friends who testified that she was bonded with her children and a "wonderful" and "a very good,

3

caring mother." The exhibits included the Department's family service plans, affidavits and pleadings from the prior case and this case, drug test results, the court-ordered evaluation of W.L., and a home assessment of P.L.'s placement, which was the home of P.L.'s paternal grandparents.

The evidence showed that W.L. tested positive for cocaine prior to and during the pendency of this case and her pregnancy with P.L., missed drug tests that the Department requested, was behind on court-ordered child support payments, and did not visit with her children after April 2019. The caseworker testified that W.L. "never contacted them again" after a visit with her children in April where W.L. got "upset" and that the trial court abated all visits in May because she was a "no-show and no-call to the visits." The caseworker also testified that, "[w]hen the case first opened, [W.L.] texted [J.L.-L.] and wanted him to hide her drug paraphernalia in his bedroom," "which he did." In her testimony, W.L. characterized the paraphernalia as "tobacco paraphernalia, like a hookah." W.L. testified that she had not paid child support since March 2019 and admitted to using marijuana and cocaine in the prior case, but she denied using cocaine during this case.

The guardian ad litem for the children testified about the children's current placements, the plans for the children if the parents' rights were terminated, and her continuing concerns about the children if they were returned to W.L.'s care. Although she testified that she had "no doubt that [W.L.] loves her children" and "takes good care of them," it was her opinion that it would be in the children's best interest to terminate W.L.'s parental rights. Her concerns about W.L. included her relationship with her mother S.W. and her conduct during the pendency of this case, including "noncompliance with the Court orders," "taking vacations instead of

paying court-ordered child support," testing positive for drugs, "fail[ing] to drug test since June," and being "discharged from therapy because of sporadic attendance and no-shows."

In its rulings, the court did not terminate W.L.'s parental rights to J.L-L. As to the other four children, however, the court found by clear and convincing evidence that W.L. engaged in conduct and placed her children with persons who engaged in conduct that endangered the physical and emotional well-being of the children, that she failed to comply with the court-ordered services, and that termination of her parental rights was in the best interest of the children. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O), (2). The trial court thereafter signed the decree of termination and order appointing managing conservator. The court removed S.W. as the managing conservator of any of the children.

W.L. filed a request for findings of fact and conclusions of law. In response, the trial court entered findings of fact and conclusions of law, including the following findings: (i) W.L. assaulted the children's sole managing conservator S.W. in October 2018 by attacking S.W. with a knife; (ii) W.L. "has a history of engaging in drug use and has shown an unwillingness to stop"; (iii) W.L. "has shown an unwillingness to follow orders of probation, under threat of incarceration"; (iv) W.L. "has shown an unwillingness to follow the orders of the Court"; and (v) W.L. "was not a credible witness while testifying." W.L. also filed a motion for new trial, which was overruled by operation of law. This appeal followed.

5

**Challenge to Evidentiary Sufficiency**

We begin with W.L.'s second and third issues that challenge the legal and factual sufficiency of the evidence to support the trial court's predicate-grounds and best-interest findings as to the termination of her parental rights to her children.

**Standard of Review**

To terminate parental rights, the Department has the burden to prove one of the predicate grounds in section 161.001(b)(1) of the Texas Family Code and that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable standard of proof is the clear and convincing standard. Tex. Fam. Code § 161.206(a); *see In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (explaining that due process requires clear and convincing standard of proof in parental termination cases). The clear and convincing standard is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)); *see* Tex. Fam. Code § 101.007 (defining "clear and convincing evidence"). Although "parental rights are of constitutional magnitude," "it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d at 26.

Legal sufficiency review of the evidence to support a termination finding requires a court to look at all the evidence in the light most favorable to the finding and consider undisputed contrary evidence to determine whether a reasonable trier of fact could have formed a

firm belief or conviction that its finding was true. *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018); *In re J.F.C.*, 96 S.W.3d at 266. "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *In re A.C.*, 560 S.W.3d at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*; *see In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (explaining that, in factual sufficiency review, court of appeals "should not supplant [fact-finder]'s judgment with its own"); *In re C.H.*, 89 S.W.3d at 23 (describing factual sufficiency review).

**Predicate Grounds**

The trial court found that the Department met its burden as to two predicate grounds. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O). Because termination of a parent's rights can stand on one statutory ground plus a best interest finding, we limit our review to W.L.'s challenge to the sufficiency of the evidence to support the ground set out in section 161.001(b)(1)(E) of the Family Code—that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child." *See id*. § 161.001(b)(1)(E); *In re N.G.,* 577 S.W.3d 230, 232–33 (Tex. 2019) (explaining that only one predicate ground is necessary to support termination of parental rights when there also is best interest finding); *In re A.V.*, 113 S.W.3d at 362 (same).

"'Endanger' means 'to expose to loss or injury; to jeopardize.'" *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (quoting *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "Although 'endanger' means more than a threat of

7

metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.* The relevant inquiry under subsection (E) is whether evidence exists that the endangerment of the child's well-being was "the direct result of Appellant's conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied) (citation omitted). "Additionally, termination under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent," and "courts may look to parental conduct occurring both before and after the child's birth." *Id.*

W.L. argues that the evidence of endangering conduct by her "may be legally sufficient but it is factually insufficient" to support a finding under subsection (E). W.L. argues that the children were removed from S.W.'s possession based in part on S.W.'s "violent streak" and that W.L. was the "protective one." W.L. focuses on the fact that the Department placed the children with S.W. at the conclusion of the prior case, evidence that the children were doing fine when they were in W.L.'s care prior to their removal in this case, and evidence that S.W. was an alcoholic prone to violence. According to W.L., the "cumulative evidence from almost every witness is that [S.W.] was an alcoholic, prone to violence, and a liar" and "[a] reasonable factfinder could not take [S.W.]'s hair-raising story about the altercation with [W.L.] at face value." W.L. also relies on the negative drug test from June 2019 that she provided to the Department and the notation of "abnormal" on the report from the drug test that was taken in April 2019.

The report from the April 2019 test, however, reflects that the positive finding for cocaine was not invalid but that the abnormality was "abnormal physical characteristics—odor."

8

W.L. also did not dispute that she used illegal drugs in the prior case and during her pregnancy with P.L. *See In re M.E.-M.N.*, 342 S.W.3d at 262 (authorizing courts to "look to parental conduct occurring both before and after the child's birth" in making endangerment determination); *Pruitt v. Texas Dep't of Family & Protective Servs.*, No. 03-10-00089-CV, 2010 Tex. App. LEXIS 10272, at \*13–14 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.) (noting that relevant evidence to endangerment determination "may include conduct before the child's birth and both before and after the child has been removed by the Department"); *see also In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct.").

The evidence was undisputed that W.L. used illegal drugs during the first case, tested positive for cocaine in November 2018 when she was pregnant with P.L. and during the pendency of this termination proceeding, and that she missed drug tests that the Department requested for several months leading up to trial. *See In re M.E.-M.N.*, 342 S.W.3d at 263 ("A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, supports a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." (citation omitted)); *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("A factfinder reasonably could infer that [parent's] failure to submit to the court-ordered drug screening indicated she was avoiding testing because she was using drugs."); *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) (same). The conservatorship caseworker testified that W.L. did not drug test for the Department after May 2019.

W.L. also admitted during her testimony that she was arrested following the domestic violence incident with S.W. in October 2018, pleaded guilty and was convicted of

9

assault, and was facing a probation revocation at the time of trial. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment."); *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) ("[I]ntentional criminal activity which exposed the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child." (citation omitted)).

Although W.L. denied using cocaine during the pendency of this case, the trial court reasonably discredited this testimony, resolved other credibility issues and conflicts in the evidence against W.L., and credited the evidence of W.L.'s history of illegal drug use, the domestic violence incident in October 2018, and W.L.'s criminal activity in reaching its endangerment determination. *See In re J.J.O.*, 131 S.W.3d 618, 632 (Tex. App.—Fort Worth 2004, no pet.) (explaining that, in bench trial, trial court determines credibility of witnesses and weight to be accorded to their testimony); *see also In re S.B.*, No. 07-19-00146-CV, 2019 Tex. App. LEXIS 9695, at *29 (Tex. App.—Amarillo Nov. 5, 2019, pet. denied) (mem. op.) (observing that "as the trier of fact, the trial court resolved credibility issues and conflicts in the evidence against [parent]" and concluding that evidence was sufficient to support predicate ground for termination).

After carefully reviewing the record, we conclude that the evidence was legally and factually sufficient to support the trial court's finding that W.L. engaged in conduct which endangered the physical or emotional well-being of her children. *See* Tex. Fam. Code § 161.001(b)(1)(E); *In re A.C.*, 560 S.W.3d at 630–31; *In re M.E.-M.N.*, 342 S.W.3d at 262. Because only one predicate ground is necessary to support termination of parental rights, we do

10

not address the trial court's other predicate-ground finding and overrule W.L.'s second issue. *See In re N.G.,* 577 S.W.3d at 232–33.

**Best Interest**

In her third issue, W.L. challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of W.L.'s parental rights was in her children's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

Relevant factors in assessing the best interest of a child include: (i) desires of the child, (ii) the stability of the home or proposed placement, (iii) parental abilities, (iv) the emotional and physical needs of the child now and in the future, (v) the emotional and physical danger to the child now and in the future, (vi) the plans for the child by the individual or agency seeking custody, (vii) the programs available to assist the individuals seeking custody to promote the best interest of the child, (viii) acts or omissions by the parent showing that the parent-child relationship was not proper, and (ix) any excuses for the parent's conduct. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code § 263.307 (stating that "prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest" and listing factors that court should consider "in determining whether the child's parents are willing and able to provide the child with a safe environment"). No one factor is controlling, and evidence presented to satisfy the predicate-ground finding may also be probative of the child's best interest. *In re C.H.*, 89 S.W.3d at 27–28; *Pruitt*, 2010 Tex. App. LEXIS 10272, at *22–23.

As to the children's placements, V.P., Jr., who was 10 years old at the time of trial, had been placed with his football coach from October 2018. The guardian ad litem testified

11

that V.P., Jr. wanted to remain with his coach and his wife and be adopted by them. The coach testified about his family's bonded relationship with V.P., Jr. and resources to care for V.P., Jr. The family became a licensed foster home in order to adopt V.P., Jr. if the parents' rights were terminated. The coach also testified that, if he was allowed to adopt V.P., Jr., he would allow contact between V.P., Jr. and his father and other family members but that he was not sure about allowing contact with W.L. M.L.-P. and K.L. were placed with a foster family who hoped to adopt them if the parents' rights were terminated. The guardian ad litem testified that the director of the daycare that they attended told her that "they call their caregivers Mommy and Daddy and look to them as their parents." P.L. was placed with his paternal grandparents a few days after he was born in December 2018. The Department's plan was for the grandparents to be joint managing conservators with P.L.'s father. The evidence showed that the children were safe and being taken care of in their current placements.

W.L. testified that she could provide for her children and wanted them to be placed with her, that she was employed as a dental assistant, that her children did not have problems in school prior to their removal, and that they "want to come home." She testified that she was paying rent on a four-bedroom house that was ready if the children were returned to her. She also testified that she had and could parent appropriately and denied drug use during the pendency of the case. As to the missed drug tests, W.L. testified that she did not take some of them because her "number" on the drug test "wasn't sent in for a couple of weeks" and that she had not heard from her caseworker since around April 2019. The evidence also included the negative drug test from June 2019 that W.L. provided to the Department and W.L.'s friends' testimony that W.L. was a "wonderful," "good," and "caring" mother.

12

The caseworker, however, testified that W.L. was not employed throughout the pendency of the case and that the "only employment that [the caseworker was] aware of was" for about one month; that she "[had] not had any contact" with W.L. because W.L. "does not respond to [her] calls, text[s], or home visits, so [she had] no idea what [W.L.]'s been doing or had not done"; and that, when the case first opened, W.L. asked J.L.-L. "to hide her drug paraphernalia in his bedroom." The evidence also showed that: (i) W.L. did not complete the required tasks in the Department's service plan or visit with her children after April 2019; (ii) she pleaded guilty and was convicted of assaulting S.W. in October 2018; (iii) she did not comply with the Department's requests for drug testing for several months leading up to trial; (iv) she tested positive for cocaine during the case's pendency and while pregnant with P.L.; (v) she was behind on court-ordered child support; and (vi) she was on bond for a probation revocation at the time of trial. *See A.C. v. Texas Dep't of Family & Protective Servs.*, 577 S.W.3d 689, 705 (Tex. App.—Austin 2019, pet. denied) (explaining that "factfinder is entitled to give 'great weight' to a parent's drug-related conduct, as it is considered a 'significant factor' supporting termination"); *In re S.N.*, 287 S.W.3d 183, 193 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (concluding that father's inconsistent and missed visits supported trial court's best-interest determination); *Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 682 (Tex. App.—Austin 2005, no pet.) (concluding that trial court could have found that parent's conduct and resulting criminal charges that remained pending at time of trial "created such instability and uncertainty" that placed child in danger of physical and emotional harm and that returning child to parent "could cause future physical and emotional damage to the child"); *Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied) (explaining that "a fact

13

finder may infer that past conduct endangering the well being of a child may recur in the future if the child is returned to the parent").

Resolving the credibility issues and conflicts in the evidence, the trial court reasonably could have discredited W.L.'s testimony that she was drug-free, employed, and ready to parent appropriately. *See In re J.J.O.*, 131 S.W.3d at 632 (explaining that trial court in bench trials determines credibility issues and weight of evidence). Viewing the evidence under the legal sufficiency standard of review, we conclude that the trial court could have formed a firm belief or conviction that terminating the parental rights of W.L. was in her children's best interest. *See* Tex. Fam. Code § 161.001(b)(2); *In re A.C.*, 560 S.W.3d at 630–31; *In re J.F.C.*, 96 S.W.3d at 266. Further, viewing the evidence under the factual sufficiency standard of review, we conclude that the evidence is such that the trial court reasonably could have formed a firm belief or conviction that termination of the parental rights of W.L. was in the best interest of her children. *See In re A.C.*, 560 S.W.3d at 631; *In re C.H.*, 89 S.W.3d at 25. Thus, we conclude that the evidence was legally and factually sufficient to support the trial court's best interest finding. We overrule W.L.'s third issue.

**Due process**

In her first issue, W.L. contends that her due process rights were violated because the termination proceeding "did not even rise to the level of a fair process." *See In re B.L.D.*, 113 S.W.3d 340, 352 (Tex. 2003) (explaining that "proceedings to terminate parental rights must comply with the requirements of procedural due process" and, in context of termination proceedings, "[t]he phrase 'due process,' although incapable of precise definition, expresses the requirement of fundamental fairness").

14

In particular, W.L. argues that "[t]he service plan failed to offer services 'reasonably tailored to address any specific issues identified by the department' as necessary to help W.L. to achieve reunification." *See* Tex. Fam. Code § 263.202(b)(3) (requiring court to review service plan and make finding whether plan is "reasonably tailored to address any specific issues identified by the department"); *see also id.* § 263.106 (requiring court to incorporate original and amended service plan into orders of court and authorizing court to "render additional appropriate orders to implement or require compliance with an original or amended service plan"). W.L. argues that her due process rights were violated because the Department's service plan should have been amended after she completed her psychological evaluation during the pendency of the case to incorporate recommendations from the evaluation and to include services to assist W.L. with complying with those recommendations. The service plan required W.L. to complete a psychological evaluation and to "follow all recommendations" from the evaluation.

W.L. did not raise these arguments with the trial court and, therefore, has not preserved them for our review. *See* Tex. R. App. P. 33.1(a) (addressing preservation of error); *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (holding in parental rights termination case that due process argument that father was raising was not preserved for appellate review because it was not raised in trial court); *In re B.L.D.*, 113 S.W.3d at 352–55 (discussing cases in which courts have declined to review unpreserved error when constitutional rights are at stake and holding, under circumstances of that case, "court of appeals must not retreat from our error-preservation standards to review unpreserved charge error in parental rights termination cases"); *P.R.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-16-00065-CV, 2016 Tex. App. LEXIS 9468, at *9 (Tex. App.—Austin Aug. 26, 2016, no pet.) (mem. op.)

15

(overruling due process arguments because they were not presented to trial court and preserved for appellate review); *In re D.W.*, 249 S.W.3d 625, 631 (Tex. App.—Fort Worth 2008, pet. denied) (overruling constitutional challenge to statute in context of parental rights termination case because challenge was not raised with trial court).

In her reply brief, W.L argues that she was not required to preserve her due process arguments about the Department's service plan for this Court's review because she challenged the legal and factual sufficiency of the evidence to support terminating her parental rights under subsection (O). *See* Tex. Fam. Code § 161.001(b)(1)(O). As explained above, however, we need not address her challenge to the sufficiency of the evidence under subsection (O) because we have concluded that the evidence was legally and factually sufficient to support terminating her parental rights under subsection (E). Further, even if we were to consider the substance of W.L.'s due process arguments about the Department's service plan, we would conclude that she has not shown that the plan was fundamentally unfair such that it violated her due process rights. *See In re B.L.D.*, 113 S.W.3d at 352 (explaining that "[w]hat fundamental fairness requires in a particular situation is determined by 'considering any relevant precedents and then . . . assessing the several interests that are at stake'" (quoting *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 25 (1981))).

The interests at stake in a parental rights termination proceeding include the "parent's fundamental liberty interest in the care, custody, and control of his or her children" and the child's best interest. *Id.* at 352–53. In this case, the Department listed concerns about W.L.'s illegal drug use, domestic violence between W.L. and S.W., and W.L.'s inability to provide a safe and stable home and sufficient income to meet her children's basic needs. Based on these expressed concerns, the Department required W.L. to participate in individual counseling, submit

16

to weekly drug tests, and pay child support and prohibited her from using illegal drugs and participating in criminal activities. The plan also provided W.L. with specifics such as contact information and locations as to her required tasks. In the context of this case, we cannot conclude that this plan was unfair to W.L. We further observe that W.L. has not identified, and we have not found, authority to support her contentions that the Department is required to amend a service plan to incorporate a service provider's recommendations and that the failure to do so violates the parent's due process rights. We overrule W.L.'s first issue.

## Conclusion

For these reasons, we affirm the trial court's final decree of termination and order appointing managing conservator.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed: March 12, 2020

17